JOHN L. WOODS, administrator of WILLIAM EAMES, deceased, appellee, vs. The CREDITORS of said estate, appellants.

An administrator will be allowed his account for expenditures in a law suit, in which he fails to recover, when he acts in good faith, and with reasonable prudence; but he may press on a suit with so little prudence, and so little prospect of recovery, that he ought not to be allowed his costs.

An administrator should be charged with interest on monies he receives for the estate, during the time of any delay of a settlement of the estate, or when he can fairly be presumed to have used the money, or had safe opportunities to have kept the same on interest.

The principal administration being in this state, and the same person being also administrator in New-Hampshire, and not having closed his administration there for a long time, shall be held accountable here, in the first instance, for monies he received in New-Hampshire before he took administration there, and also, for monies received afterwards, for property which he had not inventoried there, and for which monies he had rendered no account there.

An administrator is to be charged with a loss in the sale of real estate, which he might have saved by prudent management; especially when he was interested in the last bid and purchase.

The said *John L. Woods* rendered his account of his admin-

istration before the court of probate for the district of Bradford, and the same was allowed. *Messrs.* Skinner and *Dewey*, two of the creditors of the estate, were dissatisfied with the allowance of several items of the account, and appealed from the decision of such allowance to this Court. The appeal was entered at the last term, and a commissioner was appointed to take the account, and report to this Court. At this term he returned a full and special report; to some items of which exceptions were file by each party. These exceptions were argued by counsel. The facts upon each point, decided, sufficiently appear in the opinion of the Court, which was pronounced by

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors.

HUTCHINSON, C. J.—It is a matter of regret,that an administrator should be several years settling an estate, without keeping an accurate daily account of his services. The sum charged for services is objected to. The commissioner reports, that no regular account was kept from day to day ; but the administrator made up the account chiefly from memory, when he was about to exhibit it to the Court of probate for allowance. This is too loose for allowance, without support from some other source than his memory. Yet the commissioner has reported such supporting facts, and the particular controversies reported show the estate in a situation so embarrassed, and requiring so much time and attention to settle it, we have concluded to affirm the report upon this item of the account. We also affirm the report upon some small items, which may not be exactly as they should be, but the commissioner states them to have been all in good faith. We also affirm the account of sales of personal estate, where the administrator was the highest bidder, and became the purchaser ; there being no ground, from the facts reported, to believe the estate injured by his bids. But we charge him with five dollars he gained in selling a sleigh for so much more than his bid for it. We also disallow the sum of $6,71, paid Mr. Underwood for attending before the court of probate on the rendition of his account, because this was rendered necessary only by his want of regularity and care in keeping his accounts. The commissioner has allowed the administrator his expenditures in several suits,in which there was a recovery against him, and which are of considerable amount. These were objected to before the commissioner, and the objections again urged before this Court. We affirm the decision of the commissioner in all these except one, on the ground, that no blame seems attached to

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors.

him in the business. That one is, the case of *John L. Woods,* administrator of *W. Eames,* vs. Pettes, Tarbell & Co.

It appears by the report, " that said Pettes, Tarbell & Co. presented to the commissioners, appointed on the estate of *William Eames,* their account against said estate, and the administrator presented in offset the claims of said *Eames* against Pettes, Tarbell & Co. ; and the commissioners found, and reported, a balance in favor of said estate against said Pettes, Tarbell & Co. of $4,15, which claim, together with the one first above mentioned, and one other, in favor of the administrator, in his private right, were, by the administrator, handed to Abel Underwood, Esq. of Wells river for collection ; that said Underwood, finding a Mr. Gale, a resident at Wells river, was going to Rockingham, the residence of Pettes, one of said firm, made writs on each of said claims, together with one other in which the Administrator had no interest, all justice suits, and handed them to said Gale, with directions to call on said Pettes, and, if he would pay said claims and the additional sum of five dollars for costs, the said Gale was at liberty to discharge said suits ; but, in case Pettes declined, then to hand the writs to an officer to be served. Gale called on Pettes, who declined settling the other demands, but offered to pay Gale the balance found by said commissioners, being the claim on which this suit was brought. But it did not appear whether he offered to pay any costs or not. Gale declined receiving pay on one of said demands, unless the whole were settled ; and the writ was served on Pettes returnable at Newbury. The declaration was in assumpsit, containing one count for $4,15, as a balance found due by the commissioners, to which was added a general count for goods sold and delivered. On the trial before the magistrate, the attorney of Woods offered in evidence, in support of his claim, a transcript of said *Eames'* account against Pettes, Tarbell & Co., on the back of which was a certificate, subscribed by the commissioners of said estate, of the examination and allowance of said account, and that a balance was found due said estate of the sum of $4,15. To the admission of this paper, the attorney for the defendants objected, on the ground that it did not furnish the legal proof of the allowance by said commissioners ; which objection was sustained by the court, and the paper rejected. The attorney for the plaintiff then resorted to his second count, and offered the original account of said *Eames* in support thereof, to which the defendants pleaded their account in offset. The plaintiff objected to the allowance of said offset, on the

ground, that the same was barred, because it could have been
recovered only by presenting it to the commissioners. The ob-
jection was overruled by the Court; and, upon the adjudication
of said claims, said Court found a balance of about one dollar in
favor of the defendants. From this judgement the plaintiff ap-
pealed to the county court, and, on trial there, the plaintiff obtain-
ed a verdict for said sum of $4,15. The defendants then made
a motion to dismiss said action, on the ground that the county
court had no appellate jurisdiction thereof. This motion proved
unsuccessful, when the defendants filed in court a motion in ar-
rest of judgment, on the ground that the plaintiff should have de-
clared in debt, and not in assumpsit. Said cause was continued
in said county court, pending said motion, to the next term, at
which term, on hearing of said motion, judgement was arrested.
The plaintiff filed exceptions to the opinion of the court, and the
cause was removed to the Supreme Court, where, after one con-
tinuance for advisement, said Supreme Court affirmed the judge-
ment of the county court, and gave costs to the defendants for the
two terms in the Supreme Court. The Administrator has charg-
ed the estate for costs and expenses in this suit the sum of $107,-
50."

With regard to this claim, which amounts to something worthy
of notice, there seems to be an incorrect procedure in the outset.
The sending by Gale, and connecting this with several other de-
mands, and sending writs on all of them, with directions to deliv-
er them all to an officer to be served, unless Tarbell would pay
them all, and a sum in gross as costs on them all, was leaving no
discretion in Gale to receive the money on this, when offered by
Tarbell, unless he paid the whole. The report says, it did not
appear whether Tarbell offered to pay the cost in this suit or not.
This is not very material, as it would have done no good for him
to offer it; for Gale had no right to receive it. Moreover, that
had no effect upon the suit, or upon the expenditures in the suit,
now claimed by the administrator. The recovery by Tarbell &
Co., was upon entirely different grounds from that. It was said
in argument, that Gale's instructions were the work of the attor-
ney. For this purpose the doings of the attorney were the same
as if done by *Woods* himself. As *Woods* owned one or two oth-
ers of the demands, probably his views were known to his attorney ;
but that is an affair between them, and could not affect the suit.
That suit was, unnecessarily and improperly brought before the
justice for trial. Again, when the plaintiff was beaten before the

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors.

Orange,
March,
1832.

Eames' admr.
vs.
Creditors.

justice, it was very imprudent for him to appeal the cause. His claim was but four dollars and fifteen cents ; and, if he had recovered he could recover no more costs than damages. And no possible recovery, allowed by law, would prevent his being a loser by the appeal. And the going off of the action upon another point afterwards, makes no difference ; for the after costs could not have been recovered in any event whatever. We think this suit so entirely unnecessary, and the management of it attended with so little prudence, it would be wrong to make the estate of the deceased pay this cost. The allowance of $107,50 must be deducted.

The commissioner has allowed the sum of ninety dollars against the administrator, as money which he might have realized in the sale of real estate, under his licence from the probate court above what it was sold for. The circumstances were these, as reported by him : The real estate consisted of a store at Wells river, in Newbury, appraised " by the appraisers, appointed to appraise *Eames'* estate, at the sum of six hundred and fifty eight dollars. The administrator has credited the estate the sum of $410,00, as the avails of said estate. The appellants contend, that the administrator should be charged with the full value of said real estate, because, as they say, he had a secret bargain with the auctioneer for him to bid it off for their joint benefit ; and, as they say, it was sold at a sacrifice in consequence. The facts are as follow : the administrator caused due notice of the sale of the real estate to be given, by posting up notifications in the public places in the town, and in the adjoining towns, about one month before the sale, which was advertised to take place on the first of December, 1829 ; and, on that day, the administrator caused the real estate to be offered for sale at public vendue, the terms cash in thirty days from the sale. The administrator employed Roswell Shurtleff as auctioneer, in the sale of said estate. The said store was offered for sale in the forenoon of said day ; the administrator having advertised personal property of his own, in which the estate had no interest, to be sold at the same time ; and there was a considerable collection of people present at the sale, which took place in the same building then offered to be sold. The administrator had a private understanding with one Walter Robin, to bid for him, the administrator, a sum not exceeding $375, or $400. Robin bid several times. The store stood at $350 ; when an adjournment was had for about two hours ; and it was then again offered. Messrs. Shedd, White and Hutchins, all living at Wells

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors.

river, two of whom were merchants, and the other a dealer in paper, books, &c., were desirous to purchase the store, and had a private understanding with each other ; that White alone should bid, who was authorized to give five hundred dollars, in case he could not buy at a less sum. White testified, that he went to the vendue intending to bid as high as $500, in case he could not purchase for less ; and Hutchins testified, that it was his impression a still higher sum was spoken of. After the postponement, and before the sale recommenced, the administrator privately proposed to Shurtleff, the auctioneer, that he, (Shurtleff,) should bid in the estate, for the joint benefit of said administrator and himself, at a sum not exceeding five hundred dollars. Shurtleff declined this proposal, but agreed to purchase said store for the mutual benefit of said *Woods* and himself, at a sum not exceeding $450, in case no one bid higher. The administrator states, that his motive in making this arrangement with Shurtleff was, to prevent a sacrifice, as he suspected a combination between Shedd, White and Hutchins. About the time the sale recommenced, Shurtleff said to Robin, " you need not bid any more : I am going to bid." After several bids, Shurtleff, the auctioneer, bid $410. At about fifteen minutes before four o'clock, Shurtleff took out his watch, and gave notice, that the store then stood on him at $410 ; that, if no one bid by four o'clock, he should strike it off. At four o'clock, no one having bid, he gave five minutes more, and no one bidding, at the end of the time he struck off the store to himself, at $410. Both White and Hutchins were present in the store during the bidding, and both testified, without contradicting the facts above stated, that the store was struck off at a time when they did not expect it; and that White intended to have given more. Hutchins also testified, that White did not bid as promptly as he expected ; but, for some reason seemed to hold back. After the store was struck off, *Woods* declared, that if any one present would give any thing " worth while," in addition to the sum, for which it had been struck off, it should be set up again : and Shurtleff declared, it is up again for a decent bid. Immediately after, and as the company were about retiring from the store, (a sale of horses being about to take place at the door,) White enquired of Shurtleff what sum would be called sufficient for a bid, to cause it to be set up again ? Shurtleff replied, fifty dollars ; and White understood, that a bid for a less sum would not be received. To this White made no reply. While the said store was up at auction, and during the bidding, *Woods* gave notice, that he

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors.

should convey the same title, and no other, that *William Eames* had at the time of his death. At an after day, before *Woods* had conveyed to Shurtleff, and more than thirty days after the sale, White called on *Woods*, and offered him fifty dollars, in addition to the sum of $410, for the store. *Woods* declined, saying he was under obligation to deed to Shurtleff. There was no evidence of the value of said real estate offered, other than the appraisal and the sale at auction, except the following : It appeared that *William Eames* bought the store of his brother Thomas Eames in January, 1820, at $542, payable in goods at 25 per cent. advance on the cost and freight ; and that *William Eames* made repairs, afterwards, at an expense of about $260. It also appeared, that Messrs. Shedd and Tracy, merchants at Wells river, offered to hire the store for four years at a rent of eighty dollars per year. *Woods* referred them to Shurtleff, who declined the offer. There was no evidence that *Woods* ever offered the store to any one at private sale. From the foregoing facts, the commissioner is of opinion, without imputing to the administrator a fraudulent intent, further than is apparent from the facts disclosed, that he might, with due diligence, have sold said real estate at the sum of five hundred dollars, and having himself, jointly with another, become the purchaser, at $410, he ought to be charged with the difference. And he has accordingly charged him the further sum of ninety dollars."

We have dwelt upon this disclosure once and again, and find ourselves unable to make any thing of it more favorable to the administrator, than the commissioner has done. The property went at great discount from its cost, and from its appraised value. And it appears certain, that five hundred dollars might have been obtained for it. We have endeavored to give the administrator all reasonable benefit from his being ignorant, that there were those present, who would give that sum. But, when we see, that he had a person by, bidding for him ; that he was interested in the final bid, when it was struck off ; that he does not appear ever to have offered to sell at private sale, and that he announced, during the bidding, and when there was little or no opportunity to examine title, that he only sold such title as the deceased had at his death, we think he ought to be charged with the ninety dollars reported against him.

The commissioner has reported a demand against Dorman Young of $46,91, which he treats as not collected, and leaves to come in at a future settlement. But the report shows, that this

demand has been collected, pending this appeal; and he had changed the securities before that time. We decide that he shall be now holden to account for it. He should account for all the monies received to the time of final accounting. The Court will take care, that monies, received pending the appeal, shall have no improper effect as to cost.

The commissioner has reported the sum of $195,05 collected by the administrator, after his appointment in this state, and before he was appointed administrator of the same estate in New-Hampshire ; also a further sum of fifty-four dollars and ninety-two cents, collected of people in New-Hampshire, since his said appointment there, which was December 16th, 1828. Neither of which sums have been inventoried, or in any way accounted for in New-Hampshire. The administrator seems not to have attempted to show, that any debts have come against the estate of the deceased in New-Hampshire. Under these circumstances, and considering the length of time since both administrations have been pending, and no account rendered in New-Hampshire of those monies received for debts there, we make him debtor for them in his present account. After he shall have closed his administration in New-Hampshire, he must account here for the balance of monies received there. If no debts come against the estate there, he must account for the whole here. More than three years have elapsed, since that administration has been pending; yet it is not closed, nor is there any reason shown, why it is not closed, nor any reason shown, why he should not account for the money here, without the ceremony of its passing the probate office there. And he has rendered no account of it there ; not even an inventory to show, that he had it in his possession. Moreover, his accounting here secures him against all persons, except creditors living in New-Hampshire. He tells of no such creditors ; and the creditors here have good right to claim their dividend of this money. These sums must be added to the fund in the hands of the administrator.

We have considered the subject of interest also ; and have observed the sums and dates of the accounts ; and, to avoid mistakes, have prepared a plot to deliver to the clerk. The principle we adopt is this : We cast interest on the balance in his hands on the first of January, 1829, till the 30th of March, 1830, the time when he rendered his account, upon which this appeal was taken. We cast from January, 1829, because he had been administrator more than two years, and this balance had then become money in his hands. We find considerable sums credited

ORANGE,
March,
1832.

Eames' admr.
vs.
Creditors. between said first of January, 1829, and the first of December, 1829. We cast interest on this sum from said last date to said 30th of March, 1830. On some large sums, received afterwards, interest is to be cast from the time of receiving till said 30th of March, 1830. When we have found the balance in his hands at said 30th of March, 1830, when he rendered his account before the court of probate, we cast interest on that to the present time. This we deem just; because he knew the money could not be called out of his hands pending the appeal; and he can have had no difficulty in keeping this balance drawing interest in the mean time.

With the alterations now suggested, and the addition of interest, now directed, the report of the commissioner is accepted and confirmed; and directions must go to the probate court to strike a dividend of the sum thus found and established in the administrator's hands.

*P. Burbank,* for appellants.

*Mattocks & Underwood,* for administrator.