CHAUNCY WILSON AND WILLIAM DOW, *apts. v.* JACOB BATES, *Administrator of* HARRIET N. HOLMES.·

*Distribution of intestate feme covert's choses in action. Reducing of them to possession by her husband. Allowance to administrator for expenditures in unsuccessful lawsuits.*

The choses in action of a *feme covert*, in this state, who dies intestate and without issue, which had not been reduced to possession by her husband, are to be distributed to her collateral heirs, to whom her real estate, if she had any, would descend;—and not to her husband.

The fact that such choses in action were all the property that the wife possessed, and that she, before the marriage, so informed her husband, and that he, at her desire, procured her wedding dress and other wedding preparations, and was at the whole expense of furnishing the house, and that, after the marriage, she handed the notes to her husband, who took them and kept them with his other papers, do not constitute a reducing of them to the possession of the husband, or give him any valid lien upon them.

An administrator should be allowed for his expenditures in a law-suit in which he was unsuccessful, if he acted in good faith, and with reasonable prudence;—and whether he did so or not, must ordinarily depend upon the facts in each particular case.

In the present case, the administrator allowed for such expenditures, it being found that he acted in good faith, and under the advice of suitable counsel, believing he had the right of the case.

APPEAL from an order of the probate court allowing the account of the appellee, as administrator, in which account was included the account of George R. Holmes, a former administrator; and decreeing the residue of the estate, remaining after the allowance of said account, to the said George R. Holmes.

Upon trial in the county court, December Term, 1855,— POLAND, J., presiding,—the following facts appeared.

The appellants were a brother and brother-in-law, and the said George R. Holmes was the husband of the intestate, Harriet N. Holmes, whose maiden name was Harriet N. Wilson. Prior to her marriage she held some notes against her brother, Chauncy Wilson, payable to herself, given for her share in her father's estate. These notes remained unpaid in the hands of her husband at the time of her decease. After her death, her brother and sister, (she having left no children,) applied to the probate court, in Orleans county, to appoint David M. Camp administrator, and opposed the appointment of Holmes, because he lived out of the state;

—but the probate court appointed Holmes. He inventoried the above mentioned notes as the property of the estate, and, as administrator, commenced a suit upon them against said Wilson. While this suit was pending, the heirs applied to the probate court to remove him, as administrator, and the probate court did so. He appealed from this order of the probate court to the county court, when the order was affirmed; and he then carried the case to the supreme court, on exceptions, and the judgment of the county court was affirmed.

That portion of the administrator's account which was objected to was for the costs and expenses, and counsel fees of the said Holmes, in litigating said appeal from the probate court. The court found that Holmes, in all said proceedings, acted under the advice of suitable counsel, and in good faith, believing himself legally entitled to administration. Bates was appointed administrator, upon the removal of Holmes, and prosecuted the suit commenced against Wilson, on said notes, to final judgment, and collected the amount;—and, the money thus collected, was the whole estate of Mrs. Holmes in the hands of the administrator. It was proved by said Holmes, though objected to by the heirs, that before his marriage, the said Harriet N. informed him that her only means were these notes against her brother, who was not then ready to pay them; and that he, at her desire, procured her wedding dress, and other wedding preparations, and was at the whole expense of furnishing the house; and that, after their marriage, Mrs. Holmes handed the notes to her husband, and requested him to keep them, and he did keep them, with his other papers, till after her death, and until he was appointed administrator, as aforesaid, when he placed them in the hands of his attorney for collection. It was also proved that Mrs. Holmes was sick for some three months before her death, and that her husband was at a great deal of expense for nursing and medical attendance for her during that period.

Upon these facts the court adjudged that the decree of the probate court, allowing the administrator's account, be affirmed; but that the decree of the probate court ordering the residue of the estate in the hands of the administrator to be paid to the said George R. Holmes, be reversed, and that the same be decreed to

be distributed among the legal heirs of Mrs. Holmes. To this decision, as to the allowance of the administrator's account, the appellants excepted;—and, as to the reversal of the residue of the decree of the probate court, the appellee excepted.

*Cooper & Bartlett* and *T. P. Redfield* for the appellee.

The husband is entitled to the choses in action of the wife on decease of the wife; 26 Vt. 336; Story on Promissory Notes 88; *Whitaker* v. *Whitaker*, 6 John. 116; 2 Kent's Com. 420; 1 Peere Williams 380–382; Comp. Stat. 365; Reeve's Dom. Rel. 22.

The husband will be deemed to have taken the choses in action by purchase, having made advances, at the wife's request, before marriage, and the notes passed into his hands in consideration thereof; see Reeve's D. R. p. 26.

The defendant's expenditures, as administrator, having been made in good faith, and by the advice of counsel, his account was properly allowed; *Woods, Admr. of Eame's Estate* v. *Creditors of Eame's Estate*, 4 Vt. 256.

*Peck & Colby* for the appellants.

Under our statute of distributions, the property of intestates, leaving no issue, or father, goes to the mother, brothers and sisters. Comp. Stat. chap. 55, § 1. Words denoting masculine gender extend to females. Comp. Stat. chap. 4, § 1. The statute undoubtedly applies to females intestate, as well as males, and leaves no room for doubt of the propriety of the decision of the court below.

The items of costs and expenses, counsel fees, &c., incurred by Holmes, after his removal from the office of administrator by the probate court, do not constitute a proper charge upon the estate. A large share of this expense accrued in consequence of an appeal taken by Holmes, from the decree of the probate court, removing him as administrator. The county court decided against him, and likewise the supreme court, and that, too, upon the ground that the decree was not the subject of error, but was within the final jurisdiction of the probate court. In this decree, Holmes should have acquiesced, but he appealed for his own benefit, all the while claiming to own the estate. His argument in the supreme court, shows this to have been his claim; *Holmes* v. *Est. of Holmes*, 26 Vt. 540.

The suit was prosecuted by Holmes, without just cause; *Eames'*
*Admr.* v. *Creditors*, 4 Vt. 258; Comp. Stat. chap. 53, § 14. The
costs are not such as were paid out to the adverse party, the estate,
as he has paid none, but the costs of his counsel, &c. The ques-
tion cannot be settled in this form, as it only arises in the settlement
of Holmes' account as administrator, not in settling the account of
Bates, the present administrator; Comp. Stat. chap. 53, § 14.

The opinion of the court was delivered, at the circuit session in
September, by

BENNETT, J. The widow, Harriet N. Holmes, in this case, died
without issue, and, upon the settlement of her estate in the probate
office, a balance was found due the estate, in the hands of the ad-
ministrator, and that balance was decreed by the probate court to
be paid to George R. Holmes, the surviving husband of the de-
ceased wife; and, the first question is, who is entitled to that bal-
ance? Does it go to the surviving husband, or to the collateral
heirs of the wife?

The statute, Comp. Stat. chap. 55, § 1, in relation to the descent
of real estate, provides that, if the deceased person shall leave no
issue, nor widow, nor father, his estate shall descend in equal pro-
portions to his brothers and sisters, and to the legal representatives
of any deceased brother and sister, and the mother, if living, shall
have the same share. No question can arise but what this statute
applies to a case where the deceased person was a female, as well
as a male; and, indeed, our statute provides that every word import-
ing the masculine gender only, shall be held to extend to females
as well as males. The statute relating to the disposition of per-
sonal estate, provides that what shall remain for distribution shall
be distributed to the same persons, and in the same proportions, as
is prescribed for the descent and disposition of the real estate. In
the present case, the property of the wife, at the time of her de-
cease, consisted of *choses in action* which had not been reduced to
possession by the husband, in the life-time of the wife; and, in
such cases, the choses in action belong to her estate, and not to that
of her husband, and go to her issue or kindred, after the payment
of debts, and not to the husband. There is no ground to claim that
the statute of the 29th of Charles II was ever in force in this state,

which places husbands, who become administrators upon the property of the wife, in a different situation from other administrators. It is incompatible with our legislation on the subject; and our statute, like the statute of 22d Charles II, compels all administrators to distribute the estate of the intestate to the legal representatives of the wife.   The husband, though administrator of the wife, cannot retain to himself what, by the statute of distribution, goes to the issue or collaterals of the wife.   It cannot be claimed that the husband, in the life-time of the wife, reduced the notes to possession.   All that that the case finds is, that soon after the marriage the wife delivered the notes to the husband and requested him to keep them, and he did keep them, with his other papers, until after her death.   The fact that she told him, before they were married, that those notes were all her means, and that he purchased for her a wedding dress, and made other preparations for the wedding, at her request, and purchased the furniture, cannot have the effect to constitute a reduction of the notes to possession, or to give the husband a valid *lien* upon the notes, though doubtless the wife contemplated the husband should have some benefit from the notes, if not the whole of them.   We find from the case that the husband, in fact, inventoried those notes as the property of the estate, and commenced suits on them while he was administrator.   We must, then, take the notes to be the choses in action of the wife at the time of her death ; and, it was rightfully held, by the county court, that the balance of what remained of their avails, upon the settlement of the estate, should be decreed to the legal heirs of the wife.

A question is raised as to an item allowed the husband, in his administration account, for costs, expenses, and counsel fees, in litigating the appeal from the court of probate, (which vacated his letters of administration,) in the county and supreme courts.   The county court found that Holmes, in all said proceedings, acted under the advice of *suitable counsel,* and in good faith, believing himself entitled to administration, and the county court allowed him that portion of his account.   It is said in the case of the *Admr. of Eames* v. *The Creditors of said Estate,* 4 Vt. 256, that " an administrator will be allowed his account for expenditures in a law suit, in which he fails, when he acts in good faith, and with *reasonable prudence,* but he may press on a suit with so little prudence, and

so little prospect of recovery, that he ought not to be allowed his costs." The test, then, seems to be, did the administrator act in *good faith*, and with *reasonable prudence* in incurring the expenses? and, these are questions of fact.

The county court having allowed the administrator his account, upon the ground that he acted in good faith, and under the advice of suitable counsel, believing he had the right of the case, or, in other words, having acted *reasonably*, this court cannot, as matter of law, say that the court erred in allowing that part of the account. The law cannot fix a rule for not allowing to an administrator expenditures in litigation, upon the ground that they were *unreasonable*. This must depend upon the facts in each particular case. In the case in 4 Vt., the question came up upon the report of the commissioner, made directly to the supreme court, and not on exceptions. We think, then, the judgment of the county court, in this particular, should be affirmed.

Judgment affirmed without costs, as both parties excepted.