### THOMAS B. LEE *v.* HENRY C. BENNETT, Adm'r.

1. HUSBAND AND WIFE: RIGHT OF WIFE TO MAKE A WILL.—A testamentary disposition of her personal chattels, made by a *feme covert*, with the assent of her husband, is entitled at law, to all the effect of a will made by a person *sui juris*.

2. SAME: PROBATE OF A FEME COVERT'S WILL.—Whether a testamentary document, made by a *feme covert*, with the assent of her husband, be regarded as a will, or as an instrument in the nature of a last will and testament, it is equally necessary that it be regularly admitted to probate before it can have any force whatever.

3. SAME: CONSTRUCTION OF ACTS OF 1839 AND 1846: WILL OF FEME COVERT.—The Acts of 1839 and 1846, in relation to the rights of married women, are enabling statutes, and must receive such construction as to enlarge, and not to abridge their rights, in reference to their separate estate; and the mode therein prescribed for the disposition of their separate estate by *femes covert*, refer to conveyances made by them *inter vivos;* and they do not affect their right to make wills, as it existed previous to their enactment.

4. SAME: RIGHT OF HUSBAND TO ADMINISTRATION ON WIFE'S ESTATE.—The husband is entitled by law, to administration on his deceased wife's estate in preference to all others, and this right should not be disregarded by the court, unless he be manifestly unfit for the office.

5. PROBATE COURT: JUDGMENT OF: PRESUMED CORRECT.—The judgment of the probate, in a contest between two persons for the administration on a decedent's estate, rejecting the claim of the one who has the legal preference thereto, will be presumed correct, if the evidence on which the court acted be not contained in the record.

APPEAL from the Probate Court of Madison county. Hon. A. P. Hill, judge.

Mrs. Elizabeth M. Lee, who was at the time a *feme covert*, and the

wife of Thomas Lee, the appellant, during her last illness, made and published her last will and testament, by which she disposed of all her personal estate, including several slaves ; the husband, Thomas Lee, by a writing attached to the will, fully assented thereto. After Mrs. Lee's death, Thomas Lee applied to the Probate Court of Madison county and procured the probate of the will; the executors having refused to accept the trust. At a subsequent term of the said court, James Lee, the oldest child of Thomas and Elizabeth Lee, applied for letters of administration on his mother's estate, and at his instance the former probate of the will was revoked and annulled. This was done without notice to any of the legatees under the will. At the same term, Thomas Lee, the husband, applied for letters of administration with the will annexed, on Mrs. Lee's estate. The court appointed James Lee administrator. Afterwards, James Lee was removed, and Henry C. Bennett appointed administrator *de bonis non.*

It did not appear from the record, whether Mrs. Lee's title to the separate estate, disposed of by the will, vested under a settlement, or under the "Married Woman's Law" of the State.

Thomas Lee sued out this writ of error.

*Freeman* and *Dixon,* for plaintiff in error.

We assign for error :—

1. That the Probate Court had no right to set aside the probate of the will and treat the same as a nullity, on the ground that she was a *married* woman at the time the will was made. A *feme covert* may make a will of personal estate by the consent of her husband. 1 Jarman on Wills, 32, 33, note 1, and authorities there cited; 3 Rand. 373; 1 Lomax on Ex. 11, 12. The husband probated the will and asked for letters of administration, with the will annexed, which was sufficient evidence that he did not intend to revoke the will. See *Guinke* v. *Guinke,* 1 Dessaus. 366; 1 Lomax, Ex. 11, 12, 123, 124 ; 5 B. Monroe, 370 ; 12 Mass. 525 ; 5 N. H. 205; 10 S. & R. 445; 1 M'Cord, 225; 2 Ib., 66; 1 Iredell, 516 ; 2 Kent, (4th ed.) 170 ; 4 Kent, 505, 506; 4 Har. & Johns. 446 ; Powell on Devises, 450.

2. The probate of the will was set aside *without notice* to the

parties interested, and the act was therefore void. The probate of the will entitled the legatees to its bequests, unless set aside after due notice to them.

3. The husband, Thomas Lee, was entitled to the administration of his wife's estate in preference to his son.

*H. A. H. Lawson*, on same side.

1. This proceeding was void; first, because the parties claiming under the will were not notified; and, second, because the Probate Court had no jurisdiction of its own orders and decrees rendered at a previous term, so as to set them aside.

2. Letters should have been granted to the husband instead of the son, upon his application for that purpose; but the court refused the husband's application and granted the son's. The husband is preferred by the law. Hutch. Code, 655, § 54.

3. How far a married woman is entitled to convey by will, by the express authorization and consent of her husband indorsed thereon, and after her death his probating the will, seems to be an unsettled question, so far as our own State is concerned. Although it is noticed in the case of *Garnett, use, &c.* v. *Valney*, in the syllabus as a quere, yet nothing is directly said in the opinion. 27 Miss. R. 340.

The wife, under the English law, may make a will of personalty by the consent of her husband. 2 Bright, Husband and Wife, 65. Although their statute prohibits married women from so doing. 2 Bright, 39; (so under American decisions.) 1 Dessaussure, 380, 381; *Exec. of Smelie* v. *Exec. of Smelie*, 2 Ib. 76, 77; *Lucas* v. *Lucas*, 1 Atkyns, 269. See 2 Kent, Com. 170, 171. A married woman, with the assent of her husband, can dispose of her chattels by will. 5 New Hamp. 210.

*Franklin Smith*, for defendant in error.

1. In England, the married woman can only hold personal estate *as against the husband*, by reason of some deed of settlement, or some trust *ante* nuptial or *post* nuptial, giving her the use or right to personal estate; and there it has been held, that she has the *jus disponendi*, not by a will proper, but by a testamentary

writing, in the nature of an appointment. Nothing is on the record of the case at bar as to Elizabeth M. Lee, deceased, having held her estate by deed of settlement, or any trust or contract *ante* or *post* nuptial. The parties to the issue proceeded on the conceded postulate that Mrs. Lee owned the property in her own right, leaving the legal intendment to apply that she owned it in the ordinary way, by gift, devise, or purchase.

Then, by a marked concurrence of decisions by all our judges, the English rule can have no application, either by reason or authority. The English rule being expressly repudiated here in all cases which would give any power to the wife further than *is expressly* conferred and reserved by the deed of settlement or other contract; or in the absence of such instrument or contract, then the married woman has no power to dispose of her estate in this State in any other mode than that specially provided for in the statute—(in the positive words of the statute;) because, the controlling maxim that the husband's *common law rights* cannot be abridged by construction, and that they are only abridged so far as the law of the legislature curtails them, is of universal application and cognizance by the courts of this State. *Montgomery et al.* v. *The Agricultural Bank,* 10 S. & M. 566, 567-577; *Doty et al.* v. *Mitchell,* 9 Ib. 447; *Frost & Co.* v. *Doyle and Wife,* 7 Ib. 75; *Berry* v. *Bland,* Ib. 83, 84; *Curll* v. *Compton,* 14 Ib. 58; *Robertson et ux.* v. *Bruner et al.,* 2 Cushman, R. 242, 243, 244.

2. We can ask triumphantly, where is the statute in this State conferring on a married woman the power to make a will? On the contrary, we can show a statute which expressly forbids a married woman from making a will, either of real or personal estate. And here is presented a wide difference between the law of England and the law of this State, and a prominent reason why a different rule should exist there and here as to the power of a *feme covert* to dispose by testamentary writing of her personal estate. By the Statute of Wills of England, the *feme covert* is prevented from making a will *of land;* but that statute is silent as to her disposal of personal estate. 1 Roberts on Wills, ch. 1, § 2, p. 23; 2 Black. Com. 375. Our Statute of Wills *expressly* deprives all married women of the power to make a will of any of their property, whether

Lee v. Bennett.

*real or personal.* The statute is unrepealed and in full force. H. & H. 385, § 2.

3. The distributees—the children—being entitled to the whole of the personal estate of their mother, the Probate Court felt itself constrained by the decisions of this court to prefer the oldest son applying for administration, to Thomas Lee, the husband. *Langan et ux.* v. *Bowman,* 12 S. & M. 715-718; *Fowler* v. *Kell,* 14 Ib. 74.

SMITH, C. J., delivered the opinion of the court.

It appears from the record in this case, which is very inartificially made up, that a paper purporting to be the last will and testament of Mrs. Elizabeth M. Lee, was, upon due proof of the execution and publication, admitted to probate at the October term, 1853, of the Court of Probates of Madison county. The instrument in question shows upon the face of it, that at the date of its execution and publication, the testatrix was a *feme covert*—the wife of Thomas Lee. It is in form a will of the separate personal estate of the testatrix, and appears, from an instrument attached to it, attested by witnesses, and signed and sealed by her husband, to have been made by and with his consent.

The executors appointed by the will having renounced, the plaintiff in error, the said Thomas Lee, made application for letters of administration, with the will annexed, on the estate of the deceased, at the January term, 1854, of said court. At the same term James Lee, the son, and one of the heirs-at-law of the deceased, applied, whether by petition or motion, the record does not inform us, to have the former probate of the will annulled and set aside; and for letters of administration on the estate. The court, after due consideration, upon the application thus made by James Lee, revoked and set aside its previous decree, by which the said testamentary paper was probated as the last will and testament of the decedent.

The record does not show that notice in any form whatever was given of this proceeding to the persons interested as legatees under the will. Indeed, the court seems to have based its action upon the assumption that the will of a *feme covert,* although made with the

express written consent of the husband, is a mere nullity, and hence that a court of probates could not take cognizance of such an instrument as the testamentary act of the party making it, and consequently, that the decree of the court admitting to probate, as the last will and testament of the decedent, the document in question, was absolutely void.

We will not stop to notice the error into which the court appears to have fallen, in regarding the probate of the will, under the circumstances stated in the record, as a simple nullity, and consequently, that it had authority to set it aside in this summary mode, without notice to the parties claiming rights under the will, but will proceed to examine the question upon which this controversy must ultimately turn.

The question is this—has a married woman, under the laws of this State, capacity, with the consent of her husband, to make a will of her separate personal estate?

In the case of *Garrett* v. *Dabney*, 27 Miss. R. 335, this question in reference to the estate of a *feme covert* held under the statutes enacted for the protection of married women, was elaborately discussed, at bar, by the counsel. But as that cause could be finally disposed of upon other points, no opinion was expressed or intimated in regard to the capacity of a married woman to make a will of her separate estate. And it is not a little strange, in the multiplicity and great variety of litigation to which the exigencies of the times has given rise, in this State, that in no cause ever adjudicated in this court, was a decision of this question essential to a determination of the suit.

It is contended by those who maintain the negative of the question, that the power or right of *femes covert* to make a testamentary disposition of their estates, is expressly taken away by the statute "concerning last wills and testaments," passed in 1822, and that, also, by the Act of the 28th of February, 1846, amendatory of the Act usually called the "Woman's Law," this power is, by necessary implication, excluded.

By the fourteenth section of the Act of 1822, it is declared that: "Every person aged twenty-one years, if a male, or aged eighteen years, if a female, or upwards, being of sound and disposing mind,

Lee *v.* Bennett.

and not a *married woman*, shall have power, at his or her will and pleasure by last will and testament, or codicil in writing, to devise all the estate, right, title, and interest in possession, &c., which he or she hath, or at the time of his or her death shall have, of, in, or to lands, &c." Hutch. Code, 649.

The fifth section of the Act of 1839, provided that the slaves owned by a *feme covert*, under the provisions of that act, might " be sold by the joint deed of the husband and wife, executed, proved, and recorded agreeably to the laws (then) in force in regard to the conveyance of the real estate of *femes covert*, and not other- wise." Hutch. Dig. 497. The Act of 1846 repeals this section, and enacts, in the sixth section, similar provisions in relation to the conveyance of the real estate of *femes covert*.

These directions are the only provisions of our Statute Law which have any bearing upon the subject. The Act of 1839, commonly called the "Woman's Law," and the amendatory Act of 1846, were passed avowedly for the better preservation and protection of the rights of married women. They enlarge their capacity to acquire and hold property, real and personal, and are to be regarded strictly in the character of enabling statutes. The Act of 1839, was so construed by this court in *Dougherty* v. *Radcliff*, 24 Miss. R. 181; and there can be no doubt that the Act of 1846, should be regarded in the same light. Hence, it would be absurd, be- cause it would defeat the legislative intention, to give them such a construction as would abridge, instead of enlarging the rights of married women. Aside from this consideration, we think it very manifest that the subject of the disposition and transfer of the property of *femes covert*, by will, was not present to the legislative mind; but that the acts under consideration, so far as they relate to the transfer of their property by married women, was designed to apply, not to testamentory acts which could only take effect after the death of the testratrix, but exclusively to conveyances *inter vivos*.

The only provisions of our code, then, according to the view we take of the "Woman's Law," and the amendatory act, upon which the position that a *feme covert*, under any and all circumstances, is incapacitated to make a will, can be at all maintained, is contained

in the clause above quoted from the fourteenth section of the Statute of Wills, by which *femes covert* are excepted.

At all times, under the English law, it was the general rule that a *feme covert* was incapable of making a will; but to this rule there are certain exceptions. "Where personal property is actually given or settled, or agreed to be given or settled, to the separate use of the wife," she is entitled to dispose of it, to the full extent of her interest as a *feme sole;* although no particular form to do so is prescribed in the instrument by which the settlement or agreement was made. When once a *feme covert* is permitted to take personal property to her separate use as a *feme sole,* she takes it with all its privileges and incidents; one of which is the *jus disponendi.* 1 Jarm. on Wills, 33; 17 Johns. R. 585, and cases there cited and reviewed. The wife may make a will of every thing she is entitled to in *autre droit,* as where she is executrix, but nothing will pass but by a pure right of representation to the former owner; for if the property is reduced into possession, it becomes instantly the property of the husband, and cannot pass by her will. *Scammell* v. *Wilkinson,* 2 East, R. 552. She may, also, with the assent of her husband, make a testament of her *chose in action,* or even of the personal property of the husband. But to give validity to a will so made, the husband must assent to the will after her death. The will of a *feme covert,* made under those conditions, had at law all the effect of a will made by one *sui juris.* The reason why this effect was given to a will of chattels personal, made with the assent of the husband, was, that "if the wife died intestate the husband succeeded to all her personal rights, as her administrator, and her will, if it had any effect, operated to his prejudice; and hence there was, in that case, no danger that he would control the will of his wife, by the exercise of that unbounded influence which the husband, by the law, is presumed to have over the will of his wife."

It is manifest that this reason does not apply to a devise of real estate, made by a married woman with the assent of her husband. For in the event of her dying intestate, the property would not devolve by law upon him; and hence if the husband, by his assent, could give legal effect to a devise of her real estate by the wife,

he would be under the strongest possible temptation to control her will, so as to secure the property for himself to the prejudice of the heir.   And for this reason it was held, even before the Statute of Wills, 34 & 35 Hen. VIII., by the English courts, that neither by his assent nor by any other means, could a husband enable his wife to pass the title to real estates by devise.   4 Coke, 61.

The Statute of Wills, in the State of Virginia, is substantially the same, in respect to *femes covert*, as the Statute of Hen. VIII. on the same subject.   And the decisions of the courts in England, in regard to the capacity of a married woman to make a will, have been followed without deviation by the courts of the former.

In the case of *West* v. *West's Ex'or*, 3 Rand. R. 373, the principles above stated, were distinctly recognized and applied.   We refer to that case, which was an elaborate and sound examination of the subject, as settling the law in that State in reference to the questions, whether and under what conditions, a *feme covert* has the capacity to make a will.   The provision in our code upon which the question before us has arisen, was taken from the Virginia Statute.   We have therefore, no hesitation in adopting the construction applied in that State to the provision, when it was enacted by our own legislature.

Under this construction we entertain no doubt, that a testamentary disposition of her chattels personal, made with the assent of the husband, by a *feme covert*, is entitled, at law, to all the effect of a will made by one *sui juris*.   But it has been doubted whether a testamentary paper of that description should be regarded as a will, in the strict legal sense of the term; and it is said, that it should be treated not as a will, but as a testamentary paper, in the nature of a will.   But whether the document admitted to probate in this instance be in fact a will, or a testamentary writing in the nature of a will, can have no effect upon the general question which we have been considering, or upon the question of the jurisdiction of the Court of Probates.   As it is settled, that whether it be in fact a will or a testamentary paper in the nature of a will, the court had jurisdiction to admit it to probate; and that without such probate it could have no effect for any purpose whatever.

The record shows that there was sufficient evidence before the

court, to establish the due execution and publication of the will; and that the husband assented to the will before the execution, as well as after the death of the testatrix. But in the proceeding then before the court, no question in regard to the due execution of the will, could properly have arisen. The only question which could legitimately have been entertained, related to the nature and character of the instrument. For upon the light in which it was to be regarded, whether as a will or as a paper in the nature of a will, or not, depended the question of jurisdiction, and the consequent validity or invalidity of the decree admitting the instrument to probate as the last will and testament of the deceased.

Generally, the husband is entitled to administration on his wife's estate. Hence, as the executors appointed by the will had renounced, unless the plaintiff in error was manifestly unfit or incapable of discharging the duties of the office, he should have been preferred. The court, however, after having set aside the probate of the will, granted the administration to another person. In the absence of any showing to the contrary, we presume that, in this respect, the court exercised a sound discretion. But as the attempt to vacate and set aside the probate of the will was unauthorized and void, we reverse the decree, and remand the cause.