In Re Polly Carey's Estate.

IN RE POLLY CAREY'S ESTATE ; BLAKE AND MORTON, AP-
PELLANTS.*

*Will.    Revocation by Marriage.    Effect of Probate.*

The testatrix, on October 29, 1864, while sole, made her will, by which she gave to
the American Missionary Association eight thousand dollars, provided, that if that
sum should be more than half of her estate, both real and personal, then she gave
the association a sum equal to one half of her estate, and no more, and to the Con-
gregational Society at Milton Falls, all the remainder of her estate, both real and
personal.  At that time she was possessed in her own right of real estate of the
value of about thirteen thousand dollars, and of personal estate, consisting in part
of choses in action, of the value of about fifteen thousand dollars.  She afterwards
married.  Before that event, it was agreed between her and her intended husband,
that her will should be to some extent changed in his favor; but after the marriage,
upon a further understanding with him, she made a satisfactory provision for him
otherwise.  On August 2, 1868, she died, without issue.  Upon the probate of her
will, its establishment was consented to by the husband.  It appeared upon settle-
ment of the administration account, that after payment of all debts, there remained
in the hands of the executor personal property of the value of about $14,000, and
cash derived from the sale of real estate to the amount of $11,927.  *Held,* that the
probate of the will was conclusive only as to its due execution; that, as there was
no ante-nuptial agreement to keep the property of the testatrix separate, nor to cut
down her husband's right thereto, the will was revoked by the marriage as to all
personalty, whether choses in action or choses in possession; that as at the wife's
death her property had not in fact been reduced to possession by the husband, his
rights thereto, under the law as it then stood, then ceased, and that his subsequent
consent to the establishment of the will was therefore of no effect; that although
there was thus a large part of the property that did not pass by the will, yet, as the
executor had administered upon the whole estate, distribution might properly
be made upon his administration; and that as all the facts upon which distribution
should be made appeared of record, the court would render final judgment there-
on, making distribution; that all the personal property should be decreed to the
heirs of the testatrix; that as the bequest to the American Missionary Association
was a general pecuniary legacy, and as the personalty was ample for its payment,
the bequest was strictly one of personalty, and therefore revoked by the revocation
of so much of the will as related to personalty; and that the provision for the Con-
gregational Society at Milton Falls was an express devise of real estate, free from all
general legacies that there was sufficient personalty to meet.

APPEAL from a decree of the Probate Court for the district of
Chittenden, distributing the estate of the said Polly Carey in
accordance with the provisions of her will.    Trial by the court at

* Decided at the January Term, 1876.

the April Term, 1875, upon an agreed statement of facts, PIER-POINT, C. J., presiding.

On October 29, 1864, the said Polly Carey, then an unmarried woman of full age, and known by her maiden name of Tomberson, made a will, which has since been duly probated. The said Polly was then possessed in her own right of personal property, consisting in part of choses in action, of the value of about fifteen thousand dollars, and seised and possessed in her own right in fee of real estate of the value of about thirteen thousand dollars.

On February 2, 1867, after the making of the said will, the testatrix was lawfully married to one Jonathan W. Carey, and continued to be his wife and to live with him until August 2, 1868, when she died, leaving the said Jonathan surviving — no children of the marriage having been born. Before the said marriage the testatrix informed the said Jonathan of the will and its provisions, and it was then agreed between them that if they should marry, she should afterwards so change her will that it should make provision for him. She however made no change in her said will, but instead thereof, by arrangement between them after their marriage, she made a satisfactory provision for him otherwise. After the decease of the testatrix, the said Jonathan claimed all of the personal property of which she died possessed, and refused to consent to the proof and establishment of the will; but upon the assurance of the executor that if he would consent to its establishment he should have more of the estate than he could get otherwise, he executed a writing directed to the probate court, expressing his consent to its establishment; and expressed like consent on hearing on appeal in the County Court; and it was established, as before stated.

All of the said Jonathan's claims against the estate were settled before hearing in the County Court. Upon settlement of the administration account, it appeared that after payment of all debts, there remained in the hands of the executor, personal property of the value of about $14,000, and cash derived from the sale of real estate to the amount of $11,927. The appellants, Jonathan Blake and Hannah Morton, are all of the lawful heirs of the testatrix.

That portion of the will material to be stated, after making provision for the support of the testatrix's mother before any division of the estate or the payment of any legacies, and bequeathing certain specific legacies to William Bean and Hannah Morton, was as follows:

I give and bequeath to my executor hereinafter named, the sum of eight thousand dollars in trust, to pay the same in one year after my decease to the person who, when the same is payable, shall act as treasurer of the American Missionary Association in New York city, to be applied under the direction of the executive committee of that association, to its charitable uses and purposes; provided, however, that if at my decease * * * * eight thousand dollars shall be more than half of my estate, both real and personal, after the settlement of my estate, then I give to the association a sum equal to one half of my estate, and no more. I give and bequeath all of the remainder of my estate, both real and personal, to the Congregational Society at Milton Falls, for their own use and purposes forever.

There were specific legacies of personal property to Hannah Morton and William Bean. The decree of the Probate Court was affirmed, *pro forma*, with costs; to which the appellants excepted.

*Daniel Roberts* (*C. W. Witters* and *E. J. Phelps* with him), for the executors and legatees.

The estate was distributed according to the provisions of the will, which had been duly probated. In order to sustain the appeal, the appellants must establish two propositions: — First, that the will failed to operate upon all or some part of the estate embraced in it, and ordered to be distributed; and, secondly, that the appellants, as heirs, are entitled, as against the will and the decree of distribution, to all such part of the estate. This claim rests upon the theory, first, that the marriage of the testatrix after the making of the will, operated to revoke it, or to remove from its operation all or some of the property embraced in it; and, secondly, that to the extent that such property was not actually appropriated by the husband, they, as her heirs, take it.

The will was not revoked by her subsequent marriage, and " considerable of the property disposed of by the will remained

in the testatrix unaffected " thereby. *Morton* v. *Onion*, 45 Vt. 145. The same case decides, that only to the extent that the ante-nuptial will is inconsistent with the supervening right of the husband accruing by the fact of marriage, is the will rendered inoperative ; that is, whatever the marriage gives to the husband it takes from under the operation of the will, and as to the rest, the will stands, and fastens to it.

The ante-nuptial will was not affected by the marriage, as to any property that the testatrix could pass by will, for, as to that, the will remained ambulatory.

In this state the testamentary power of the wife is, and ever has been, as ample as that of the husband ; each could devise or bequeath whatever was his or hers. Rev. Sts. 1797, 209 ; Slade's Sts. 336 ; Rev. Sts. 1840, c. 45, ss. 1, 4 ; Gen. Sts. c. 49, ss. 1, 4 ; *Allen* v. *Little*, 5 Ohio, 65 ; Schoul. Dom. Rel. 258 ; *Fisher* v. *Kimball*, 17 Vt. 323 ; *Morton* v. *Onion*, 45 Vt. 153. In 1847, the power was expressly given to married women to devise their real estate ; Gen. Sts. c. 71, s. 17 ; and in 1870, to bequeath their personal estate. Acts of 1870, No. 31. The last two acts should not be construed as conferring a new power, but as designed to render the former acts certain of construction. In 1845, RED-FIELD, J., held, in a case of a married woman's will, that "by statute in this state the right to dispose of real and personal estate is put upon the same ground." *Fisher* v. *Kimball*, 17 Vt. 323. And BARRETT, J., has held, that "we have no wills as, or by force, of common or ecclesiastical law, but only by statute." *Warner* v. *Warner*, 37 Vt. 368.

The estate ordered to be distributed was of three classes, first, cash arising from the sale of real estate by the executors, which stands as real estate ; secondly, personal chattels ; thirdly, choses in action, as certain bank stock.

As both by the general provisions of the wills acts before 1847, and by the special act of that year, the testatrix had the power to dispose of the real estate during coverture, it follows that her marriage did not affect the operation of her previous will as to that.

Aside from the question of the effect of her husband's consent

to the will, it may be safely admitted that the marriage operated as a gift absolute of the testatrix's personal estate in possession to the husband, and that it was taken from under the operation of the will. But by becoming his, it ceased to be hers, and cannot be claimed by her heirs. The case also shows that the husband, after her death, vindicated his own right in that respect, and was allowed all the rights that the marriage gave him.

The marriage did not operate as a gift of her choses in action to the husband, except upon condition that he should reduce them to possession during coverture. The marriage rather gave him the right to make them his if he should so choose, by converting them to his use ; and by not doing this, they remained hers. Schoul. Dom. Rel. 114. Such chose in action " *belongs to the wife*, until the husband reduces it to possession." *Short* v. *Moore*, 10 Vt. 446. By not reducing them to possession, the husband must be taken to have consented that they should remain *her separate estate, and to her separate use.* " In chancery such choses in action are treated as the separate property of the wife." *Short* v. *Moore*, 10 Vt. 446. As to property so held, the *jus disponendi* is necessarily incident, and as to it a wife stands as a *femme sole*, and may dispose of it by will. 1 Wms. Exrs. 46, 156 ; Schoul. Dom. Rel. 253 ; *Frary* v. *Booth*, 37 Vt. 78, 85 ; Willard Eq. 634, 645. The marriage therefore did not affect the operation of the will as to such separate estate, because it did not affect its ambulatory character.

As to the revocation of a will " by implication of law " (Gen. Sts. c. 49, s. 7), the law of this state is, that " no alteration in the circumstances of the testator will in any case amount to a revocation in law ;" that it cannot be so revoked, " except from the necessity of the case ; that is, when the testator has alienated the devised estate, and there is nothing for it to operate upon, in so far it is revoked." *Parkhill* v. *Parkhill*, Brayt. 239 ; *Graves* v. *Sheldon*, 2 D. Chip. 71 ; *Blandin* v. *Blandin*, 9 Vt. 210 ; 1 Redf. Wills, 339, approving *Graves* v. *Sheldon*.

Just so far, therefore, as the marriage of the testatrix operated to convey the estate embraced in the will to her husband, to that extent, and that only (aside from his consent), was the will by

In Re Polly Carey's Estate.

implication of law revoked, or rather was the will left without subject to operate upon.

By English as well as by American law, the wife, even without an enabling statute, can with consent of her husband make a valid will of personalty upon condition that he survive her, and does not after her death disaffirm such consent. *Fisher* v. *Kimball*, 17 Vt. 323 ; 1 Wms. Exrs. 46, 47 ; Schoul. Dom. Rel. 251, 2, 3, and notes.

Here the husband consented to the will before marriage and during coverture, and afterwards in express and formal manner on probate of the will. That was a clear waiver of any right which he might by possibility have had to the estate in question, and an assent to her independent disposal of it. Schoul. Dom. Rel. 252 ; 1 Wms. Exrs. 45, 49 ; 1 Redf. Wills, 25. Nor is it material to inquire by what inducements he gave such consent. He is the only party who can have reason or right to complain. If he is satisfied, other parties must acquiesce. Any attempted distinction between the husband's consent to the will made during coverture and consent during coverture to the will made before marriage, stands upon no reason. It is, in either case, and equally, a surrender of the husband's supposed right to control and appropriate the estate, and an assent to the wife's disposal of it. The consent gave effect to the will as to the choses in action, even under the English rule of a wife's incapacity to make a will —much more in this state. *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534, 543. This decree is justified also upon the equitable ground of enforcing the agreement between Carey and his wife, both ante and post nuptial.. Iu equity that agreement was binding, and having been perfected and carried out by the decree, it should not be disturbed. *Barron* v. *Barron*, 24 Vt. 375 ; *Frary* v. *Booth*, 37 Vt. 78 ; Story Eq. Jur. s. 1372.

Finally, the appellants have no status in court entitling them to raise the question they make. It is only for the husband's sake that the rule provided that the marriage revoked the wife's will made before marriage — resting upon the idea that the exercise of the power to make such will during marriage was inconsistent with his superior rights. It is not for other parties to complain,

who do not claim under him. As to all the world but her husband, the wife has the power of a *feme sole* for the making of a will ; and as to him she has all the power left which he has not, as husband, the legal right to control, and all of his own power which he consents to yield to her. *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534 ; *Morton* v. *Onion*, 45 Vt. 145.

*Davis & Adams*, for the appellants.

The distribution according to the provisions of the will was erroneous, at least so far as the personal estate was concerned. At common law the marriage of a woman was a revocation of her will made before marriage. *Forse and Hembling's Case*, 4 Coke, 60 ; *Cotter* v. *Sayer*, 2 P. Wms. 623 ; *Doe d. Hodsden* v. *Staples*, 2 T. R. 684 ; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534 ; 1 Wms. Exrs. 93–5 ; 2 Bl. Com. 498 ; 4 Kent Com. 527 ; 1 Jarman Wills, 150 ; 2 Greenl. Ev. s. 684 ; 1 Redf. Wills, 292 ; Schoul. Dom. Rel. 251, 257 ; *Garrett* v. *Dabney*, 27 Miss. 335 ; *Loomis* v. *Loomis*, 51 Barb. 257.

And the rule of revocation by marriage was always applied as rigorously to those cases in which a married woman could, at common law, and under the English statute, make a valid will, as to those in which she could not. The only case in which it has been held that even a will made by a *femme sole* in the *execution of a power* was not revoked by marriage, is that of *Logan* v. *Bell*, 5 E. C. L. 872, and that turned upon the *construction of the settlement* under which it was made. Moreover, the statutes of Wm. 4 and of Vict. seem sufficient to sustain the decision in that case. And marriage was an absolute revocation of her will, so that it was not revived by her surviving her husband. And that rule applied with the same force to a bequest of personal property as to a devise of real estate. *Long* v. *Aldred*, 3 Adams (Eccl. Court), 48 ; *Mrs. Lewis's Case*, 4 Burn Ec. Law, 47 ; 4 Kent Com. 527, and cases cited ; *Garrett* v. *Dabney*, 27 Miss. 335.

There was no statute in this state, previous to the death of the testatrix, empowering married women to bequeath personal property ; but by the act of 1847 she could devise her real estate. Gen. Sts. c. 71, s. 17.

The expression, " every person," in the first and fourth sections of c. 49 of Gen. Sts., does not include married women, because they have no legal existence as persons. *Osgood* v. *Breed*, 12 Mass. 525 ; *Marston* v. *Norton*, 5 N. H. 211 ; *Cutter* v. *Butler*, 5 Fost. 343, 352 ; *Morse* v. *Thompson*, 4 Cush. 562 ; 1 Tolm. Sts. (1808), 121, s. 6 ; Gen. Sts. c. 49, s. 25.

The reason of the common law rule contended for rested on the fact that a married woman could not dispose of her property by will. A will made before marriage therefore ceased to be ambulatory upon her marriage. *Morton* v. *Onion, exr.* 45 Vt. 145. This reason, so far as the devise of real estate is concerned, was removed by the statute of 1847, above cited. But so far as the disposition of personal estate by will is concerned, it remained the same as at common law until the act of 1870, empowering married women to bequeath personal estate. Therefore, the plain logic of this case would seem to be, inasmuch as the testamentary capacity of a married woman, so far as it related to her personalty, was unchanged until after the decease of the testatrix, that her will to that extent was revoked by her marriage, and should be declared inoperative to pass any personal property.

Until the act of 1870 (Acts of 1870, No. 31), a married woman had no power, in this state, to make a will of *personalty*. Without the *consent of her husband*, she had no such power at common law, except in special cases in which the power was derived, not from the general rules of law, but from *settlement or other arrangement*, expressly or impliedly conferring it ; and even in these cases, the aid of a *court of equity* has generally, if not always, been necessary to render such bequests valid. 12 N. Y. 415.

The authorities that sustain the testamentary powers of married women as respects personalty secured to their *sole and separate* use, have no application to this case. The passage of the acts of 1847 and of 1870 are entitled to weight as legislative constructions of the general law prescribing who may make wills. Sedgw. Stat. Law, 214.

The question upon which the case of *Morton* v. *Onion* turned, was that of admitting the will to probate ; and in the decision of

that question, it could not be determined what property should pass under the will.

In the opinion in that case, it is stated that the court recognize that the true doctrine of the law, as to the assent of the husband to the wife's will of her personalty, is stated in *Lloyd* v. *Hodsden*, 2 Bro. C. C. 534. That case was very similar to the present one, and by reference to it, it will be seen that the rule therein stated is precisely the one contended for by the appellants. If it is recognized and adhered to, it would seem that the appellants must prevail. The validity of the will could not depend upon the consent of the husband. The marriage revoked the will absolutely, to the extent of her personal property, and nothing short of a republication by the testatrix could revive it. The arrangement with the husband before marriage did not amount to an agreement that she should have power to dispose of her property by will after marriage. During coverture he gave no consent that she might make a will. After her decease he claimed her personal property, but finally upon the assurance of the executor that he should get more of her estate than if the will was not established, he gave his consent to its establishment. That arrangement with the husband would not be sufficient at common law to enable the wife to make a will of her personalty during coverture. The rights of the heirs became fixed upon the death of the testatrix. The consent of the husband given after her death could not affect those rights. If his consent was material to revive the will or prevent a revocation, it follows that if he dissented, the revocation would be complete, and thus the operative effect of the will would be made to depend upon his act. It would thus become in reality his will.

None of the *personalty* passed by the will; but if any of it did, certainly the *choses in action* did not. 1 Ves. 49, n.; *Stephens* v. *Bagwell*, 15 Ves. 139.

The opinion of the court was delivered by

WHEELER, J. The probate of this will did not at all settle what property should pass by it. The statute, Gen. Sts. 379, s. 20, provides that " the probate of a will of real or personal es-

tate," " shall be conclusive as to its due execution;" and that only is the effect, generally, of the probate of a will. Toller Exrs. 68, 242 ; *Holman* v. *Perry*, 4 Met. 492 ; and was what was understood and intended to be the effect of the probate of this one when it was done. *Morton* v. *Onion*, 45 Vt. 145. The questions as to what this will did pass, remain, and are now to be determined on the facts agreed to. The instrument being established as the will of the testatrix, it would pass all the property embraced in its provisions that she had testamentary power over at the time of her death. The provisions of it embrace both lands and personal estate ; and, as the power to devise the former and to bequeath the latter had, for a long time before it was made, stood on different footings, it is somewhat necessary to examine into her testamentary power over each. It has been thought by many that before the Conquest, lands were devisable, and by some that they were not ; but however that may have been, it is agreed by all that after that they were not, on account of the tenure by which they were held, and not on account of any statute ; and it became settled that at common law they were not. Swinb. pt. 3, s. 2 ; Co. Litt. 3 b. ; 2 Bl. Com. 374. The statute 32 H. VIII, c. 1, s. 30, authorized all and every person to devise lands. These words in that statute were not understood to include *femmes covert;* but to avoid scruples, 34 H. VIII, c. 5, s. 14, expressly excluding them, was passed, and that was thought to have been idle. *Sir Geo. Caverlye's Case*, Dyer, 354 b. ; Powell on Devises, 140. Since then, except in a few instances, general words like those in statutes of wills, have been understood to be used, to enable those who otherwise had testamentary power to dispose by will of the particular class of property named in the statutes, and not to give power to others to make wills. *Marston* v. *Norton*, 5 N. H. 511 ; *Osgood* v. *Breed*, 12 Mass. 525 ; *George* v. *Bussing*, 15 B. Mon. 558 ; *Morse* v. *Thompson*, 4 Cush. 562 ; *Lee* v. *Bennett*, 31 Miss. 119 ; *Cutter* v. *Butler*, 5 Fost. 357. In 1847, the Legislature of this state passed an act that enabled married women to devise their lands, or any interest therein descendable to their heirs. Gen. Sts. 471, s. 17. By force of this statute, this testatrix had testamentary control of her lands up to the time of her

death, the same as she had when she was *sole* and made her will, and they would clearly pass by the will to the devisees.

But neither when the will was made, nor when she died, had any act been passed, authorizing *femmes covert* to make wills of personalty; and, as they would not be included in the general words of the statutes relating to such wills, any more than they would be in like words relating to wills of lands, she had the same and no more power by will over her personal estate than she had at common law. By that law, however, there was no presumption that *femmes covert* lacked mental capacity to make wills, for they could dispose of property over which their husbands had no control as well as *femmes sole*; but they lacked full and independent power over that which their husbands had the right to control. As was said by BARRETT, J., in *Morton* v. *Onion*, " The change of condition effected by marriage, as that expression is sometimes used, derives all its significance, as well as its operative force as a revocation of a will, from the fact that peculiar rights accrue to the husband in respect to the property owned by the wife at the time of, or coming to her during, coverture." These peculiar rights that accrue are, that the marriage places all the personal property held by the wife in her own right and not limited to her separate use, within the reach of the husband, so that he can take it to himself if he pleases, and whether he does take it or not, by his right to take it he has power to control its disposition, so that the wife is without the full control and freedom of choice about the disposition of the property that is necessary to the making a valid will. As was said by RICHARDSON, C. J., in *Marston* v. *Norton*, 5 N. H. 512, " She is under a civil disqualification arising from want of free agency and not from want of judgment." *Forse and Kembling*, 4 Co. 60; Swinb. pt. 2, IX; 2 Burn's Eccl. Law (ed. 1763), 507; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534; *Morse* v. *Thompson*, 4 Cush. 562; Mod. Prob. of Wills, 6. And in this case, although the will was made before marriage, and while the testatrix had full power over the disposition of all her property, — as there was no placing the property to her separate use, and it was not so held by her in any way, — all her personal property became, by the marriage, so situated that the

husband could control it if he would, and thereafter she was under that power for restraint, and was without full testamentary freedom as to that property. As to such a will, it is laid down in Swinb. pt. 2, IX, that, " albeit the Testament be made before the Marriage, yet, she being intestable at the time of her death, by reason her husband is then living, the Testament is voide ; for it is necessary to the validity of a Testament that the testator have abilitie to make a Testament, not onely at the time of the making thereof, when the Testament receiveth his essence or being, but also at the time of the Testator's death, when the Testament receiveth his strength and confirmation." And in Powell on Devises, 140, it is said that the law " considered the taking of a husband, being the woman's own act, to amount to a countermand in law, at least so long as coverture continued," of her will previously made. This has always been the common law governing wills of *femmes covert*, so far as the force of the wills themselves as testamentary dispositions of property has been concerned. Such wills have sometimes derived effective force from consent given by the husbands, for the reason that consent by the husband to a bequest by the wife of property to which he had a right, would amount to a gift by him of his interest, and thereby pass the property according to the will, but not by force of the will alone, nor because his consent would add anything to her testamentary ability. Bracton, 60 ; Plowden, 343 ; *Andrew Ognel's Case*, 4 Co. 48 ; Swinb. pt. 2, IX ; *Cotter* v. *Sayer*, 2 P. Wms. 624 ; *Stone* v. *Forsyth*, Doug. 707 ; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534 ; *Scammell* v. *Wilkinson*, 2 East. 552 ; *Culter* v. *Butler*, 5 Fost. 357 ; *Lee* v. *Bennett*, 31 Miss. 119 ; Redf. Wills, 23. And probably there has not ever been, and there is not now, really any question, but that at common law, a wife could make a will of personalty that, with the consent of the husband carried far enough to have his gift take effect by delivery, or far enough to bind him to the probate, where the property would go to him but for the will, would carry the property to the legatee. Redf. Wills, 22. But the consent must be to the particular will, and not mere consent to making some will, and, generally, be continued to the probate, to be operative. Redf. 24. And as matter of course, the consent

must be given at a time when the husband has a right, either inchoate or perfect, to the property bequeathed, to be of any effect. There are some cases where the consent has been given by ante-nuptial agreement or marriage articles made at a time when the husband had no right to the property, and the wills been held to be operative ; but more because the agreement or articles would keep the property so separately hers and beyond his control that no consent of his would be necessary, than because consent to the wills given at that time would have any force. *Scammell* v. *Wilkinson*, 2 East, 552 ; *Lloyd* v. *Hodsden*, 2 Bro. Ch. 534. In *Fisher* v. *Kimball*, 17 Vt. 323, the property was by ante-nuptial agreement placed to the sole use of the wife. ˙ It is suggested that if the husband actually does leave the property to the separate use of the wife during the coverture, without reducing it to his possession at all, when the coverture is ended by her death the property should pass by her will, the same as if it had been limited to her separate use. But there is this difference between the two cases : when the property is so limited, his control is limited, and her testamentary power is complete, and her will operative the same as any person's ; but when he merely leaves it to her sole use, she is exposed all the while to his power to take it, and while she is subject to that restraint, her will is inoperative. As to a will of lands by a wife, Swinburn, pt. 2, ix, says : " Albeit it did appeare by due proofe that the husband did not constraine his wife thereunto, but that she of her owne accord or free motion did make any such devise, either to her husband or˙ to any other person by his consent, yet, is not the devise good, as well because the words of the Statute are generall (and where the law doth not distinguish there may not we distinguish), as for divers other reasons grounded˙ in the common Lawes of this Realme." The agreed facts in this case show no marriage articles or ante-nuptial agreement to keep her property separate from his, nor anything that would cut down his right to her personal property or his right to reduce her choses in action, so that as the case stands, her freedom of will as to all this personalty was placed by the marriage subject to as much restraint as that of any woman could be, and her will previously made was, according to

all the authorities, to that extent rendered inoperative. And as the facts show that this property was not in fact reduced to possession by the husband, as our law then stood, when she died, his right to it wholly ceased, and it became the property of either her legatees or her heirs, without reference to any rights of his. *Holmes* v. *Holmes*, 28 Vt. 765 ; *Howard* v. *Savings Bank*, 40 Vt. 597. When the rule of the common law giving force to the wife's will on account of the consent of the husband to the probate grew up, the husband had the full right to administration of her estate without accountability, so that, in effect, the residue of her estate after satisfying debts and charges, would become absolutely his, unless she had made a will and he should consent to the probate. 2 Bl. Com. 515 ; 2 Redf. Wills, 69. Then his consent would be merely a gift or renunciation of his own rights, and the operation of the will be founded on his act, as before mentioned. But here, as husbands, according to the law as it stood when this wife died, would, after death of the wives, no longer have any right to property that was the wives', they would have nothing to yield by giving consent to the probate, and for that reason no consent they could give would be of any effect. It appears that this husband did give consent to the probate of this will ; but as he had no rights to be affected by it, the consent would have no more effect upon the rights of others than that of any other person without right would have. So this will is not made operative by any consent of the husband, and the personal property of the wife did not pass by force of it. There has been some question made as to whether her choses in action not reduced to possession by the husband, would not pass by the will, although her personal chattels should not. And there are some books and cases where language is used that, taken by itself, would indicate that such choses would so pass. Swinb. pt. 2, ix. But the reasons for her disability extend to everything that the husband would have power to take to himself, which would include things in action held in her own right, and it is apprehended that such expressions refer to rights held by the wife in a representative capacity, and not to those held in her own right. *Scammell* v. *Wilkinson*, 2 East, 552. On principle, the disability would seem to extend to every-

32

thing that would go to the husband as administrator ; and that is according to most of the authorities that have been examined. *Johns* v. *Rowe*, Cro. Car. 106 ; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534 ; 2 Burn Eccl. Law (ed. 1763), 509 ; *Garrett* v. *Dabney*, 27 Miss. 335 ; *Cutter* v. *Butler*, 5 Fost. 357 ; Mod. Prob. of Wills, 7.

Although, according to this result, there is a large part of the property of the testatrix that does not pass by the will, and would ordinarily be subject to administration by itself, still, as the executor has administered upon that part as well as upon the rest, and the whole is ready for distribution to those entitled to it, there is no occasion for any other administrator or further administration ; the distribution can properly be made upon the administration already had. *Hays* v. *Jackson*, 6 Mass. 152. And although the judgment of the County Court, decreeing distribution of the whole according to the will, must be reversed, as, apparently, all the facts upon which distribution is to be made are upon the record here, according to the later practice in this court, final judgment, making distribution as the County Court ought to have made it, is to be rendered here.

The will, being operative on the real estate, would carry that to the devisee ; and being revoked by the marriage as to the personal estate, would leave that to go to the heirs at law. The real estate appears to have been converted into money ; but this is presumed to have been regularly done under the authority of the Probate Court, for the benefit of those interested, and the avails are to go where the realty would have gone. Gen. Sts. 395, s. 38. The facts show that Jonathan Blake and Hannah Morton are the only heirs at law, and clearly all the personal property is to be decreed to them. Thus far there is no question about the distribution. But it remains to be determined who is the devisee or who are the devisees of the real estate  Or, as the will in respect to personalty was revoked by the marriage, it is necessary to determine what legacies were revoked. There can be no question but that the specific legacies of personal chattels to William Bean and Hannah Morton were revoked. The real question is concerning the bequest of eight thousand dollars to the American Missionary Association. If that, under the circum-

stances, is a bequest of personalty, it was revoked and is inoperative; if it is a bequest to be paid out of the realty, it is valid and operative. In terms this is a general pecuniary legacy of eight thousand dollars, or, if that should be more than half her estate after her decease and the decease of her mother and the settlement of her estate, of " a sum equal to one half of" her estate. In either event this was to be a bequest of a sum of money. Had her estate consisted so far of realty that there would not be enough personalty to pay the legacy of eight thousand dollars, or the sum equal to one half of her estate, the payment of it, or of the deficiency, as the devise to the Congregational Society was of the remainder, would, probably, have been a charge upon the realty. But that does not alter the nature of the bequest. The provision is still a legacy of so much money, and not a devise of realty. 2 Redf. Wills, 871 ; *Bligh* v. *Earl of Darnley*, 2 P. Wms. 619. But the testatrix had ample personal estate to pay this legacy, and, if there had been no revocation of any part of the will, there could have been no occasion to resort to the realty for payment of it. It is true that no personalty would pass by the will after the revocation, with which to pay that legacy ; but the question is not, whether the property was revoked, but whether the legacy was revoked. The rule is and has always been that general pecuniary legacies are to be paid out of the personal assets, if these assets are sufficient, and they are, in that case, strictly bequests of personal property. 2 Redf. Wills, 869 ; *Humes* v. *Wood*, 8 Pick. 478 ; *Hays* v. *Jackson*, 6 Mass. 149 ; Toller Exrs. 417 ; *Inchiquin* v. *O'Brien*, 1 Wils. 82.

According to this rule, as the personal assets were ample, this was a bequest of personalty, and was subject to revocation by revoking so much of the will as related to personal property, the same as the other bequests of personal property were. This being the case, the suggestion that there was no personalty that passed by the will to satisfy it, is of no force, for the legacy being revoked, there is no occasion to look for property of any class to satisfy it.

Further as to this question ; the words of the will are significant. There is no mention of realty in connection with this

legacy, except in limiting the amount of it, while the provision for the Congregational Society is by gift of the remainder of her estate "both real and personal." Here is an express devise of her real estate to the Congregational Society, which would be free from all general legacies that there were sufficient personal assets to meet. To ascertain what was revoked, it is necessary to look at the will according to its force and effect before revocation, and then after, and ascertain what the act of revocation took away. Had the testatrix died sole at the time of marriage, her will would have spoken a bequest of eight thousand dollars to the Missionary Association, and a devise of the real estate with a bequest of some personal to the Congregational Society. By the marriage, all was revoked but the devise, which was left in force, and remained so to her decease, and has so remained ever since.

This is according to the English rule relating to marshalling assets where lands have been devised to charitable uses not authorized by law. There the unauthorized devise was left to fail by itself, without marshalling personal assets that might be lawfully bequeathed to such uses in favor of the devisee. Toller Exrs. 423 ; 2 Redf. Wills, 788 ; *Makeham* v. *Hooper*, 4 Bro. Ch. 153.

Judgment of County Court reversed. And upon the agreed statement of facts, the sum of $11,927, avails of real estate, with its accumulations, if any, is decreed to the Congregational Society at Milton Falls, for its own uses and purposes forever ; and the residue of the estate to Jonathan Blake and Hannah Morton.

To be certified to Probate Court.