JANE M. MARRIOTT *vs.* SAM BADGER, a Negro.

A court of law has no power to compel an election where none has been made; a party attempting to compel an election can only obtain relief in a court of equity.

Where a party holds both the legacy and the property which he claims paramount the will, it cannot be said he has made an election, for the right of choosing is not exercised whilst both are held and claimed.

Where a legacy is given by a will which manumits a negro claimed by the legatee by title paramount, nothing but an *actual election* by the legatee to take the legacy and let the negro go free can confer freedom upon the latter; receiving the legacy and holding the negro as a slave cannot prove such election.

Where the legatee elects to claim the property held by title paramount, the party to whom such property was given will be decreed *compensation* out of the legacy; but such compensation could confer no benefit upon a negro manumitted by the will but claimed by the legatee by title paramount, because the master would be entitled to the compensation as owner of the slave.

Where there is no condition annexed to a devise or bequest, *compensation*, and not forfeiture, is the principle on which equity enforces an election.

APPEAL from the Circuit Court of Howard county.

This was a *petition for freedom*, by the appellee against the appellant. The facts of the case necessary to the understanding of the opinion of this court are fully stated therein.

Four *exceptions* were taken in the course of the trial, but all of them were abandoned except the *second*, which was taken by the defendant to the granting, by the court below, (BREWER, J.,) of the instruction set out in the opinion of this court. The verdict and judgment being in favor of the petitioner, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Thos. S. Alexander* for the appellant argued the following points:

1st. Conceding that the rule of equity, that a party cannot be permitted to take a benefit under a will and set up a title adverse to that will, is also a rule of *law*, and that where an election has actually been made between two inconsistent titles, it is competent to a court of law to determine the consequences of such election; it is insisted, that the jurisdiction to *compel* an election belongs exclusively to a court of equity. 2 *Story's Eq.*, secs. 1077, 1080, 1081.

2nd. That election is a fact which, when involved on an issue at law, is to be tried by a jury; whereas, the court has assumed it to be a matter of law, and has deduced the conclusion or estoppel at law from circumstances which would not have warranted a jury in finding that Marriott had made an election in favor of the petitioner. 1 *Swanst.*, 359, *Dillon vs. Parker. Ibid.*, 409, *Gretton vs. Haward.* 1 *Ball & Beaty*, 1, *Stratford vs. Powell.* It will be observed that the petitioner was held as a slave by Marriott, deceased, from the time of the petitioner's birth to the time of Marriott's death, and since this last event he has been continually held by the appellant.

3rd. That William H. Marriott acquired title to Hess, the mother of petitioner, as the representative; that is, executor or administrator of his mother, Sarah Marriott, and could not have been compelled to make an election between that title and the benefit which he acquired in his individual character under the will of William Hammond. The title must be in the same party and held in the same character before a case of

Marriott vs. Badger.

election can occur. 2 *Ves., Jr.*, 544, *Cavan vs. Pulteney.* 2 *Ves. & Bea.*, 127, *Brodie vs. Barry.* 3 *Ves.*, 384.

4th. That the rule of election is founded on the natural equity, that a party shall not take benefit under an instrument, and at the same time disappoint another of the benefit intended for him by the same instrument. And it is applied by requiring the party who would claim one thing under the will, and by a paramount title, one other thing in opposition to the will, to abandon that other thing which he claims by a paramount title to the person to whom it is given by the will, or to make to the party disappointed by his election a compensation out of the thing given him by the will. The jurisdiction is to be exercised at the instance and for the benefit of the party disappointed by the election. But in this case, under the most favorable hypothesis, Marriott, deceased, held but an undivided third part of the mother of the petitioner in common with the surviving daughters of John Hammond. If he had elected to take entirely under the will of William Hammond, such election would not have benefited the mother, who would have remained a slave to the surviving daughters, and no compensation could be made to her for the loss of her freedom, which was the benefit designed her by William Hammond's will.

5th. That as William H. Marriott made no election in his lifetime, the right to elect must, upon the hypothesis of the petitioner, have devolved on the appellant. If she shall elect to claim the petitioner, he will not be entitled to compensation out of the benefits which Marriott, deceased, took under William Hammond's will. In such case the appellant cannot be put to election.

*Wm. H. G. Dorsey* for the appellee.

1st. The only question argued in the court below was, whether an election could be taken advantage of *at law?* and is the only one I propose to argue here. The point is, that Marriott having received the legacy under the will of William Hammond, the defendant claiming under Marriott is *estopped* from disputing the validity of the manumission of negro Hess, the mother of the petitioner. 2 *Story's Eq.*, secs. 1075, 1080.

Marriott *vs.* Badger.

1 *Swanst.*, 400, *Dillon vs. Parker.* 2 *Gill*, 182, *McElfresh vs. Schley.* 8 *Gill*, 273, *Waters vs. Howard.* This rule is a rule of law as well as of equity, and was enforced *at law* in 9 *Barr.*, 456, *Preston vs. Jones.* 17 *Seargt. & Rawle*, 16, *Cauffman vs. Cauffman.* 2 *Rawle*, 174, *Stump vs. Findlay.* 12 *Pick.*, 146, *Reed vs. Dickerman.* 18 *Maine Rep.*, 46, *Weeks vs. Patten.* 6 *New Hamp. Rep.*, 333, *Hamblett vs. Hamblett.* *Lord Mansfield* has said that the rule is recognised in courts of law. 4 *Term Rep.*, 743. See also the opinion of *Lord Loughborough*, in 2 *Ves., Jr.*, 696, *Wilson vs. Townshend*, and of *Lord Redesdale*, in 2 *Sch. & Lef.*, 450. In the present case there was an actual election; the taking of the legacy is conclusive, and the estoppel is an inference of law from the facts. 65 *Law Lib.*, 272. 9 *Gill*, 484, *Henderson vs. Jason.*

2nd. Marriott held the negro Hess under a division of the estate and not as administrator of his mother. After this lapse of time the court will presume that the estate was fully administered.

ECCLESTON, J., delivered the opinion of this court.

The first, third and fourth bills of exceptions having been abandoned, we need not examine them, and our attention will be confined to the second.

The prayer granted, and which is now the matter in controversy, is, "that if the jury find from the evidence that Hess, the mother of the petitioner, was the slave of John Hammond, and was bequeathed as such by the will of said John Hammond to his son Wm. Hammond, and after the death of said Wm. Hammond was received by William H. Marriott, (his mother Sarah Marriott being dead,) as a part of her share of the estate of said John Hammond, so bequeathed to the said Wm. Hammond as aforesaid. And shall also find, that Hess was the person named in the will of Wm. Hammond as manumitted thereby, she being at the death of said Wm. Hammond under the age of forty-five, and able to work and gain a sufficient livelihood and maintenance, and that the petitioner

was born after the said Hess would have been free under the will of said Wm. Hammond, and shall further find that the petitioner is held by the defendant under the will of said William H. Marriott, and that the said William H. Marriott before the birth of the petitioner, received legacies of Wm. Hammond's own property under the said will, then the defendant is estopped from disputing the validity of the manumission of said Hess, under the will of said Wm. Hammond."

In the argument, on both sides, it was conceded that Hess was the slave of John Hammond, who bequeathed her to his son Wm. Hammond for life, and that after his decease, she together with other negroes passed under the will of John Hammond to his daughter Mary Marriott, and the children of his deceased daughters, Henrietta Brown and Sarah Marriott; between whom the negroes were divided, and Hess fell to the share of William H. Marriott, a son of Sarah Marriott. That after the division, and whilst Hess was held by William H. Marriott, the petitioner was born. That under the will of Wm. Hammond, a considerable sum of money, without specifying the amount, was received by William H. Marriott. That at the time when, according to the will of Wm. Hammond, Hess would have been entitled to freedom, she was under forty-five years of age and able to maintain herself. And that the petitioner is held by the defendant under the will of William H. Marriott.

Thus far the parties agree in regard to the facts; but they differ as to whether William H. Marriott took, and held Hess, as administrator or executor of his mother, or as a distributee. The appellant insisting it was in the former character, and the appellee that it was in the latter. Assuming the appellee to be right, still, in the view we take of the matter in controversy, he cannot succeed.

In support of the prayer it is said, that William H. Marriott having taken a legacy given to him by the will of his uncle, which will manumitted Hess, he could not hold the legacy and at the same time claim the negro as a slave, although he might have a paramount title to her, either through

Marriott *vs.* Badger.

his mother, or in any other way, because the law will not permit him to take under the will and against it also, for if the will gives him a legacy, and likewise gives *his property* to another, the doctrine of election will compel him to choose which he will have, but he cannot take both.

If a testator bequeaths a legacy to A, and gives his property to B, should A actually elect to take the legacy, and surrenders his property in conformity with the will, no doubt B may hold it in opposition to any subsequent attempt on the part of A to regain it. But in case A retains his own property, and takes the legacy also, it cannot be said he has made an election. For having the privilege of taking either, the right of choosing is not exercised, whilst both are held and both are claimed. He may, however, be compelled to make an election; but the party insisting upon it can only obtain relief in a court of equity, a court of law having no power to compel an election where none has been made. And when a decree in equity is passed, requiring an election to be made, if A determines to claim his own property, B will then receive compensation for his loss out of the legacy given to A.

The proof in this case shows that neither Hess or her son (the petitioner,) was ever permitted to go free, but on the contrary were held as slaves by William H. Marriott, to the time of his decease, and since then the petitioner has been so held by Mrs. Marriott.

The negroes could not have been free under the doctrine of election, unless an election in point of fact was made. Receiving the legacy under his uncle's will, and also holding the negroes as slaves, cannot prove that William H. Marriott ever did make an election, so as to confer freedom upon the negroes, for nothing short of an actual election could do that.

If this were (as it certainly is not) a proceeding in equity, to compel an election, it could avail nothing in behalf of the freedom claimed, unless the master should determine to take the legacy and let the negro go free. If in such a case the choice should be to hold the negro as a slave, and the chancellor could then decree compensation to the negro out of the

legacy, as might be done in favor of a freeman, had the negro been bequeathed to him instead of the testator having undertaken to give freedom to the slave, such compensation could confer no benefit whatever upon the negro, for the reason that the master would be entitled to the compensation, as the owner of the slave, and also of whatever belongs to or can be acquired by him or her.

It would be useless to enquire, whether choosing to hold the negro would forfeit the legacy, for the benefit of the distributees or next of kin of the testator, because let that question be settled either way it could not give freedom. That could only be given by an election to take the legacy instead of the negro. It seems however from the notes to *Streatfield vs. Streatfield*, in *White's Equity Cases*, 65 *Law Lib.*, top-pag. 273, that where there is no condition annexed to a devise or bequest, *compensation* and not forfeiture is the principle on which equity enforces an election.

The prayer does not submit to the jury the enquiry, whether there was proof to satisfy them that William H. Marriott had elected to take the legacy in the place of Hess, or had made any election on the subject. But bases the claim to freedom, simply upon the ground that William H. Marriott received a legacy under the will of his uncle; notwithstanding it appears that he continued all the while, to hold the woman as a slave. The prayer distinctly assumes, that by the receipt of the legacy, by William H. Marriott, before the birth of the petitioner, "the defendant is estopped from disputing the validity of the manumission of said Hess, under the will of said Wm. Hammond."

Believing that receiving the legacy, and continuing to hold the negro in slavery without any testimony tending to show that an election was made, did not confer freedom, we think the court erred in granting the instruction.

The principles applicable to cases of election, are fully and ably discussed in *Dillon vs. Parker*, 1 *Swanst.*, 359, and *Gretton vs. Haward, Ibid.*, 409. See also 2 *Story's Equity*,

*secs.* 1075, 1077, 1080, and *note* 2 *to* 1080. These authorities, we think, sustain the views expressed in this opinion.

On page 380 of 1 *Swanst.* it is said: "Taking both estates, enjoying that which was his own, and also that given to him by his son, how can it be said that he relinquishes one and elects to take the other? Has he not rather elected to take both?" And on the same page, the Master of the Rolls considers that the court cannot declare a party has elected to take one piece of property and renounce the other, when the evidence of his intention to retain his own, is at least as strong as the evidence of intention to accept that which is given to him. He says: "The utmost that can be contended is, that he has no right to enjoy both; that he was bound, and that the daughters might have compelled him, to make an election."

The authorities cited from Pennsylvania, by the appellant, can have but little influence here, on such a question as this. There they have no separate chancery jurisdiction, but law and equity are blended, and the same court administers both, so blended. One of the cases cited, *Cauffman vs. Cauffman*, 17 *Seargt. & Rawle*, 28, shows the propriety of this remark. Judge Duncan refers to a case mentioned in the note in 1 *Swanst.*, 397, where it appears that at a very early period, the chancery court of England enforced the doctrine of election against a widow claiming dower. And in that connection he says: "Wherever chancery would restrain execution, our courts of common law would hold there should be no recovery, as this is the only way in which equity could be administered; for the conditional verdict and judgment, though frequently resorted to, to enforce equity, yet never have been applied to cases of election."

The prayer having been improperly granted, in our opinion, the judgment must be reversed.

*Judgment reversed and procedendo awarded.*