JOSEPH PIERCE and EDWARD ROWLES, *vs.* Negro JOHN.

A prayer which leaves to the jury the finding of a fact of which there is no evidence, is erroneous.

Pierce and Rowles, *vs* Negro John.

A court of law has no power to compel an election where none has been made, and where a negro claims his right to freedom by election, nothing short of facts constituting an actual election can avail him.

A receipt given to an executor "for $1050, in *negroes*," which the parties acknowledge to be their "full and just share of negroes," and receipt of the negroes from the executor, furnish some evidence of an acknowledgment by such parties, that the negroes belonged to the testator, and that he had the right to manumit them.

APPEAL from the Circuit court of Prince Georges county.

This was a petition for freedom filed by the appellee, who claimed his freedom under the will of Richard Pierce. The case was tried upon the issue of freedom *vel non*.

*1st Exception.* This exception was taken by the defendants (the present appellants,) to an order passed by the court, (CRAIN, J.,) before the trial, requiring them to enter into a recognizance in the sum of $2500, conditioned not to remove the petitioner out of the State, nor obstruct him from attending the court in support of his petition.

*2nd Exception.* The petitioner offered in evidence the will of Richard Pierce, executed on the 18th of December 1850, and admitted to probate on the 20th of May 1851. This will manumits the petitioner, John, at the death of the testator, and also negroes Aaron, Charles, Priscilla, Adaline and Mary. The will also contained a bequest of $100, to the testator's daughter Mary Rowles, wife of Edward Rowles, and directed the residue of his property to be sold, and the proceeds equally divided between his son and daughter, Joseph Pierce and Mary Rowles. The petitioner also offered the inventory of the estate of Richard Pierce, in which the petitioner and the other negroes manumitted by the will were appraised, also the final account of Joseph Pierce the executor, in which he claimed allowance for the following payments and disbursements, "1st. Of current money, legacy left by deceased to Mary E. Rowles, as per receipt filed and recorded, $100. 2nd. Of current money, appraised value of six negroes divided between representatives, as per receipt filed and recorded, $2125." Also the following receipt signed by said Rowles and wife, dated the 17th of April 1851, acknowledged before

a justice of the peace, and recorded in the office of the register of wills. "Received of Joseph B. Pierce, executor of Richard Pierce, deceased, of Prince Georges county, Maryland, one thousand and fifty dollars, in negroes, which we acknowledge to be our full and just share of negroes. Names of negroes are John, Priscilla and Mary."

The defendants then offered a bill of sale executed by Richard Pierce, on the 25th of November 1828, conveying to Mary E. Pierce, (afterwards the wife of Rowles,) among other personal property, a negro woman named Charity, and her three children, Moses, Aaron and Priscilla. It was admitted that Mary was the child of Priscilla, and John, the petitioner, the child of Charity, mentioned in this bill of sale, born after its execution. It was also proved that the petitioner remained in possession of Richard Pierce, from his birth till the death of said Pierce. The defendants then, upon the whole evidence, asked four instructions, in substance as follows:

1st. That petitioner is not entitled to recover, unless the jury find from the evidence that subsequent to the date of the bill of sale of 1828, and before the date of the will of Richard Pierce, the said Mary E. Pierce, or she and Rowles, or the latter himself, after their intermarriage, reconveyed or transferred their property in petitioner under said bill of sale to Richard Pierce.

2nd. That petitioner is not entitled to recover, unless the jury find from the evidence, that at the time of the execution of the will of Richard Pierce, the testator had full title to the petitioner by a transfer of title to him from Mary E. Pierce, or from her and Rowles, or from the latter himself, by actual selling, or by bill of sale duly recorded, provided they find he was the son of Charity, and born after the execution of said bill of sale.

3rd. That it is not competent for the petitioner, claiming under the will of Richard Pierce, to impeach the validity of the bill of sale of 1828, at the time of its execution; and that the fact of the petitioner remaining in the possession of the

said Richard, does not impair the title of the grantee in said bill of sale.

4th. This prayer is sufficiently stated in the opinion of this court.

The court refused to grant either of these prayers, and to this refusal the defendants excepted.

*3rd Exception.* This exception was taken by the defendants, to the granting by the court of two prayers asked by the petitioner, which are fully stated in the opinion of this court.

*4th Exception.* This was taken by the petitioner to the refusal of the court to admit certain testimony, but as no appeal was taken by the petitioner, the point was not decided by the court and is not therefore reported.

The verdict and judgment was in favor of the petitioner, and the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Daniel C. Digges* for the appellants, contended, that the judgment of the court below should be reversed:

1st. Because the refusal to grant the appellants' prayers took from the jury all the material facts *on both sides* of the case, as presented by the record. 2 *Gill,* 426, *Charleston Ins. Co. vs. Corner.* 2 *Md. Rep.,* 75, *Brown vs. Ellicott.*

2nd. Because the granting of the appellee's prayers put the case to the jury *solely* upon the hypothesis advanced by the appellee's counsel, and it was upon testimony too slight and inconclusive. 9 *Gill,* 331, *Clarke's Adm'r vs. Marriott.* 4 *H. & J.,* 517, *Burt vs. Gwinn.* 7 *H. & J.,* 291, *Riggin vs. Patapsco Ins. Co.*

3rd. Because the ruling of the court below seems to be based upon the erroneous idea that the defendants were bound to show their claim to the negro, when in fact the sole question in the case is slavery *vel non.* 9 *G. & J.,* 174, *Negro Harriett vs. Ridgely.*

4th. Because the refusal to grant the appellants' prayers and the granting of the appellee's tended to mislead the jury, and did in fact invade their province. 5 *H. & J.*, 57, *Walkup vs. Pratt.* 1 *H. & G.*, 308, *McElderry vs. Flannagan.* 2 *H. & G.*, 183, *Ferguson vs. Tucker.* 12 *G. & J.*, 236, *Gray vs. Crook.* 6 *G. & J.*, 63, *Crawford vs. Berry.*

The question of election or compensation, or forfeiture, does not arise in a case at law, but is only cognizable in equity. 5 *Md. Rep.*, 306, *Marriott vs. Badger.* 4 *Bouvier's Inst.*, 251. 1 *Powel on Devises*, 442, *note* 7, and 443, *note* 4. 9 *G. & J.*, 174, *Negro Harriett vs. Ridgely.*

The inventory, administration account and receipt, are not conclusive upon the executor or any one else. 9 *G. & J.*, 180. 4 *Kent*, 260, 261. 2 *Smith's Lead. Cases, Amer. Notes*, 511 to 555. 8 *Mees. & Wels.*, 209, *Carpenter vs. Buller.*

*John T. B. Dorsey* and *Thomas G. Pratt* for the appellee, contended:

1st. That the appellants having accepted the legacies bequeathed to them by the will of Richard Pierce, are *estopped* from denying the right of petitioner to his freedom. 1 *Jarman on Wills*, 374. 2 *Story's Eq.*, secs. 1075, 1079, and *notes.* 1 *Swanst.*, 400, *Dillon vs. Parker.* 2 *Gill*, 181, *McElfresh vs. Schley.* 4 *Term Rep.*, 743. 4 *Bouvier's Inst.*, 251.

2nd. The appellants having consented to the appraisement of the petitioner, with the other negroes mentioned in the bill of sale, as part of the estate of Richard Pierce, and having made a distribution of said negro property under the will and given receipt therefor to the executor, the court below were right in instructing the jury that they might infer that the title derived under the bill of sale had been relinquished by the grantees therein. 2 *Sch. & Lef.*, 449, *Birmingham vs. Kirwan.* 9 *Barr.*, 456, *Preston vs. Jones.* 2 *Yeates*, 389, *Hamilton vs. Buckwalter.* 4 *Term Rep.*, 743. 10 *Maine*, 42, *Holbrook vs. Armstrong.* 6 *New Hamp.*, 333, *Hamblett vs. Hamblett.* 12 *Maine*, 138, *Allen vs. Pray.* 2

*Rawle*, 173, *Stump, et al., vs. Findlay, et al.* 17 *Seargt. & Rawle*, 16, *Cauffman vs. Cauffman.* 18 *Maine*, 46, *Weeks vs. Patten.* 12 *Pick.*, 146, *Reed vs. Dickerman.*

3rd. If the appellee is right in the grounds taken in his first and second point, then the court was right in rejecting the appellants' prayers. 3 *Gill*, 278, *Isaac vs. Williams.*

The court were right in rejecting the appellants' first prayer, because it required the court to say, that although the title in Richard Pierce might have been acquired after the execution of his will by a *legal* transfer from Mary E. Pierce or Rowles and wife, still the jury must find against the petitioner. Their second prayer is open to the same objection, it requiring the title of Richard Pierce to be perfect at the time of execution of the will, and shutting out the possibility of a subsequent acquisition of title by him. And also asserting that an actual selling, or bill of sale duly recorded, was the only mode of acquiring title to a slave for life. 3 *Gill*, 278, *Isaac vs. Williams.*

The fact of distribution and the receipt for the residue of the estate of Richard Pierce under his will, was evidence of an election by Rowles and wife to take all the property bequeathed to them under and by virtue of the will, and it was competent for the jury to find for the appellee upon such evidence of election, in accordance with the decision in *Marriott vs. Badger*, 5 *Md. Rep.*, 306. Independently of the doctrine of election, the second prayer of the appellee authorizing the jury to infer a relinquishment of title by Rowles and wife, derived under the bill of sale, was properly granted, it being no invasion of the jury's province, but leaving them to find the fact of such relinquishment and only declaring the law as applicable to that fact.

ECCLESTON, J., delivered the opinion of this court.

The first prayer granted by the court at the instance of the appellee is, that "if the jury believe from the evidence, that Rowles and wife received the said negro John from the executor of Richard Pierce, as a part of her residuary legacy under

v.6

the will of Richard Pierce, and also received her distributive share of the whole of the said estate of said testator, then it is not competent for said defendants to set up any title to the said negro John, inconsistent with the title asserted by the testator in his last will and testament." The court were wrong in giving this instruction, if for no other reason, because there is no evidence to show that Rowles and his wife received her distributive share of the whole of the estate of the testator. The administration account, given in evidence by the appellee, states the payment of the legacy of $100, bequeathed to Mrs. Rowles; but the same account shows, that after deducting all the credits claimed, there still remained a balance due the estate, of $237.85. There is no evidence whatever, that Rowles and wife or either of them ever received any part of this balance, or that it was necessary to apply the same to any other legitimate purpose. Their receipt, offered in evidence, refers to the negroes alone, and the account shows this balance is exclusive of them.

The appellee's second prayer is, "If the jury believe from the evidence, that Rowles and wife have received the negro man John, under the will of Richard Pierce, from his executor, that they may infer that the title derived under the bill of sale had been relinquished by them." This instruction the court gave, and in doing so we think they committed an error, for the reason that there is no evidence that Rowles and wife received the negro under the will. The receipt does not state the negroes were so received. And the will cannot justify any such inference, but on the contrary its provisions negative any claim in these parties to the negroes. They are all manumitted to be free at the testator's decease. The will then gives Mrs. Rowles $100. It directs the *residue* of the personal estate to be sold; that the proceeds after paying the $100, shall be equally divided between the testator's son and daughter, Joseph Pierce and Mary Rowles. All, therefore, which Rowles and wife could claim or receive under the will, could be nothing more than the $100, and a moiety of the residue of the personalty, exclusive of the manumitted negroes.

They surely constituted no part of the *residue*, directed to be sold and divided, because they were to be free at the decease of the testator.

The administration account, which is part of the petitioner's proof, also seems to contradict the idea that the negroes were received under the will. The first item of disbursements speaks of the $100, as a "*legacy* left by deceased to Mary Rowles;" but when a credit is claimed in regard to the negroes, the language used is, "of current money, appraised value of six negroes, divided between *representatives*, as per receipt filed and recorded." The parties supposed to be entitled are spoken of as *representatives*, and not as *legatees;* nor is the property called a legacy, or residuary bequest, or gift.

Looking to some of the authorities referred to by both parties, and considering the principle involved in the first prayer, granted at the instance of the appellee, we suppose the court refused the first and second prayers of the appellants, under the impression, that notwithstanding the title of Rowles and wife, under the bill of sale, yet as they had received a legacy under the will, the petitioner might be entitled to freedom according to the doctrine of election. But the principles established in *Marriott vs. Sam Badger,* 5 *Md. Rep.,* 306, are opposed to the appellee's right to freedom by election. There are not in the case before us, any facts, which can be considered as constituting an actual election, and nothing short of that can avail. Rowles and wife received the legacy it is true, but they also held and claimed the negro as a slave. They did not elect to take the legacy in lieu of the negroes, but determined to have both.

This matter of election is so much discussed in the case referred to, that we decline saying more on the subject at present.

In the absence of any right to freedom, according to the doctrine of election, we see no good reason why the first and second prayers of the appellants should not have been granted; and consequently we think the court did wrong in refusing them.

The fourth prayer of the appellants asks the court to instruct the jury, if the defendants received the petitioner from the executor, and executed the receipt offered in evidence, "that such receipt and acceptance is not evidence of an acknowledgment in a court of law upon their part, that the testator had the right to manumit said slave."

Their receipt is given to the executor, *as such*, for one thousand and fifty dollars *in negroes;* which they acknowledge to be their "full and just share of negroes." The names of the negroes, mentioned as received, are John, Priscilla and Mary.

Negro Aaron is named in the bill of sale and is appraised in the inventory, but is not mentioned in the receipt, and yet that paper acknowledges John, Priscilla and Mary, to be the full and just share of the negroes which Rowles and wife were entitled to receive. There is no more evidence to show that Aaron had been, since the bill of sale, sold or conveyed, by Rowles and wife, or either of them, to her father, than there is that the other negroes were so sold or conveyed. And as Aaron was not claimed at all, and the other three negroes were received of the executor, and acknowledged by the parties to be their *full share*, it cannot well be supposed they were claiming under the bill of sale. But the negroes having been appraised in the estate of Richard Pierce, and the receipt being for $1050, *in negroes*, and they stated to be the full and just share of Rowles and wife, are circumstances perfectly consistent with the theory, that those parties were claiming the negroes, as constituting a part of the estate of Richard Pierce. If the claim had been made under the bill of sale, what necessity was there for saying any thing about the value of the negroes? or why speak of them as being a *share?* If they were the property of Mr. and Mrs. Rowles, in consequence of the bill of sale, they did not *share* them with any one. But considering the receipt as acknowledging satisfaction of a claim to negroes belonging to the estate of Richard Pierce, it was consistent with the nature of the transaction to have the value inserted, and also to state that the

negroes received were in full of the share to which the parties were entitled. And, under the circumstances, the acceptance and the receipt do furnish some evidence of an acknowledgment, that the petitioner belonged to the testator; and if so, they necessarily furnish some evidence of an acknowledgment, that he had the right to manumit him. The court were therefore right in refusing to give the instruction.

Having thus disposed of the case, we see no necessity for saying any thing in relation to the appellants' third prayer.

The bill of exceptions taken by the appellee, is not before us, as there is no appeal on his part.

We reverse upon the appellee's first and second prayers, and also upon the appellants' first and second prayers, and affirm on their fourth.

*Judgment reversed and procedendo awarded.*