IN RE HARRIET C. PECK'S ESTATE.

October Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1908.

*Wills—Wife's Testamentary Capacity—At Common Law—Under · Our Statutes — Election — Husband's Election Whether to Take Under Wife's Will—How Exercised—By Matter in Pais—Essentials—By Written Waiver—Requisite Action of Probate Court—Extension of Time Within Which to Waive—Discretion of Probate Court—Effect of Probate of Wife's Will on Husband's Right of Waiver—Statutes— Construction—V. S. 2543—Pleadings on Appeal from Probate Court—Formal Requisites.*

The word "as" in V. S. 2543 providing that a widower may waive the provisions of his deceased wife's will "as a widow may waive the provision of her husband's will," means "in the same manner in which."

Where a wife died testate, leaving no issue, and her surviving husband, upon application to the probate court made within eight months after the will was probated, was granted an extension of time within which to elect whether to waive its provisions, and within the time thus extended he gave the probate court written notice that he elected to waive the provisions of the will and to take two thousand dollars and one-half the remainder of the estate, the waiver was exercised seasonably and in the manner prescribed by law, as it was within the discretion of the probate court to grant the extension.

At common law, a married woman was incapable of devising lands; and since that incapacity arose wholly from her status, it could not be cured by her husband's renunciation of his interest in the devise.

At common law, a married woman was, with few exceptions, incapable of bequeathing chattels, without the assent of her husband; but, as that disability arose wholly from his marital rights, such be-

quest was valid if assented to by him, and such assent was to the particular will and continued to its probate; and the probate was conclusive both as to proper execution and the husband's assent, where that was necessary.

Where at common law a wife thus made a valid bequest of chattels with her husband's consent, it amounted to a gift from him; and though his interest in the property passed according to the will, it was not merely by force of it, nor because his consent added anything to her testamentary capacity.

Since our statute gives every married woman of age and sound mind the power to dispose of her real and personal estate, regardless of her husband's consent, neither the validity of her will nor its probate depends on such consent being shown, and, hence, the surviving husband cannot by the probate of his wife's will be estopped subsequently to elect to waive its provisions and take under the statute.

The right of a surviving husband to waive the provisions of his wife's will is not affected by either his failure to object to or appeal from the probate thereof; and any question as to whether he shall take under the will, or under the statute of descent in consequence of his waiver, is involved in the decree of distribution and should be determined in connection therewith.

The maxim, *expressio unius est exclusio alterius*, applies to V. S. 2356, providing that "the probate of a will of real or personal estate shall be conclusive of its due execution," and its conclusiveness is impliedly so limited.

Where a surviving husband seasonably filed in probate court his written waiver of the provisions of his wife's will, no action thereon by the probate court was necessary to perfect the waiver, but the same was completed and perfected by such filing, and survived the husband's subsequent death; and nothing less than such acts as, had there been no election, would have constituted an implied one to take under the will, can work an estoppel *in pais*, precluding the husband from taking in opposition to the will.

An election may be by matter *in pais* as well as by matter of record, but it can be only by plain and unequivocal acts, with full knowledge of all the circumstances, and of the party's rights, and with the intent to elect.

But when the acts of the person bound to elect between two courses
   do not show a choice of either to the rejection of the other, there
   can be no election.

In an appeal from a decision of the probate court holding inoperative
   the written waiver of the provisions of a wife's will seasonably
   filed in said court by her surviving husband, for that by his acts
   he had previously accepted the provisions of the will and was
   thereby estopped to take in opposition thereto, the admitted
   allegations considered and *held*, that they fail to show such
   estoppel.

The technical accuracy required in common law pleadings is not essen-
   tial to pleadings in proceedings in county court on appeal from the
   decision of the probate court on a petition there presented.


APPEAL by Sayles Nichols and Gardner S. Wainwright, as
executors of the will of Edward W. Peck, surviving husband
of Harriet C. Peck, from the decision of the probate court, on
petition of William H. Clark, one of the legatees of the will of
Harriet C. Peck, holding inoperative and void the written waiver
of the provisions of the will of said Harriet C. Peck, filed in said
court by her said surviving husband.   Heard at the March
Term, 1907, Chittenden County, *Hall*, J., presiding, on the ap-
pellant's demurrer to the petitioner's motion,—consisting of
a motion to dismiss the waiver proceedings, combined with alle-
gations in the nature of a plea in abatement thereof; on the
petitioner's demurrer to the third section of the appellants'
"answer" to his petition; and on the petitioner's objection,
made in probate court, to the order of that court allowing said
Edward W. Peck an extension of time within which to elect
whether to take under his wife's said will.   Motion to dismiss
the waiver proceedings overruled, *pro forma;* the matter al-
leged in abatement, as aforesaid, adjudged insufficient; demurrer
to the third section of appellants' "answer" overruled, and
that section adjudged sufficient; petitioner's objection to the
order of the probate court allowing Edward W. Peck said exten-
sion of time, overruled, *pro forma;* and judgment that the peti-
tion be dismissed with costs, that the waiver be sustained, and
that the estate be distributed according to law.   To said rulings
and judgment the petitioner excepted.   The appellants are also
the executors of the will of Harriet C. Peck.   Besides the alle-

gations of the third section of the appellants' "answer" that are recited in the opinion, that section, having reference to *Jed P. Clark et al.* v. *Harriet C. Peck's Exrs. et al.*, 79 Vt. 275, alleged that on January 4, 1905, and after Edward W. Peck had filed the waiver in question, Jed P. Clark, Joseph E. Clark, Irene W. A. Clark, Irene Clark Odlin and Dora Odlin, legatees under said Harriet C. Peck's will, brought their bill of complaint to the court of chancery within and for the county of Chittenden, against said Edward W. Peck, the appellants, as executors of the will of said Harriet C., and against said William H. Clark and all others named as legatees, devisees, or beneficiaries in said will, except said orators; that in that suit, and on January 10, 1905, an injunction issued against said Edward W. Peck, enjoining him, his servants, agents, and attorneys, from using any part of the principal fund of the assets of the estate of said Harriet C. Peck for his personal advantage or living expenses, and containing other prohibitions, to be operative until further order of court; that said injunction was granted within less than a year after the probate of the will of said Harriet C., which was on February 1, 1904; that said bill in chancery, among other things, prayed for an injunction against the judge of probate for the District of Chittenden, where the waiver in question was filed, forbidding his taking any action on account of said waiver, and also for an injunction against said Edward W. forbidding him to prosecute said waiver till further order of court; that these appellants and said Edward W. were advised that, pending said litigation, it would be improper for them, or either of them, to do or attempt anything in the matter of said waiver, and in consequence of said advice they did nothing; that said Edward Peck deceased June 26, 1906, and before the announcement of the decision in said chancery litigation, and that during his life, in consequence of the waiver and of said injunction, the executors, acting under the advice of counsel and to protect themselves and the estate, and at the request of said Edward W. Peck in order that nothing might be done inconsistent with his said waiver of the provisions of his wife's will, kept a true and accurate account of the dealings between her estate and said Edward W. from January 1, 1904, to June 26, 1906, the date of his decease, charging him with cash advanced and with the use of the residence of his said wife, and of her furniture, carriages, and horses, and

other privileges and appurtenances of the homestead, and, in view of the injunction, crediting him with cash refunded to the estate by him, at the end of each of the years 1904 and 1905, on account of advancements to him in excess of the net income of the estate; that the balance was struck at the end of each year and no repayment is credited for the year 1906, that balance not having been adjusted because Edward died in the middle of the year. The opinion otherwise fully states the case.

*C. S. Palmer* for the petitioner.

The waiver should have been made within twenty days after its probate. V. S. 2584. The rights of a husband to the property of his wife have always stood upon a different basis than the rights of a woman to her husband's estate. At common law the wife could make no will. The next step was that by statute she could make a will by her husband's consent, and the consent of the husband was held to be given as a matter of law by his allowing the probate of her will without contest, and by allowing the probate he could not thereafter make any claim adverse to the will. This principle of the common law has never been changed. The right of a married woman to-day to will away her property when she dies without issue is subject to the husband's consent. If he does not consent he waives her will and takes his statutory right, but if the husband allows the will of his wife to be probated he thereby consents and cannot thereafter revoke his consent thus formally given. *In re Polly Carey's Est.*, 49 Vt. 236.

It is apparent from No. 45, Acts 1906, that Mr. Peck must waive his wife's will in order to gain for himself the advantages thereunder. So far as this statute shows on its face, one of three things must be true. First, either that there is no time limit fixed within which Mr. Peck must fulfill the statutory requirement and waive the will, and that therefore he is to be allowed a reasonable time within which to perfect his waiver. Second, that there is some general provision of law fixing the period of time within which Mr. Peck must make his waiver; or, third, there is some specific provision applying to this particular act fixing the time. The first of these propositions, to wit, that of a reasonable time, cannot be true if there are any

provisions of statute law which would make either the second or third proposition true. V. S. 2584, is a general provision covering this point, therefore the proposition of reasonable time can be at once dismissed. Considering the second proposition we find that under V. S. 2584, any order, sentence, or decree of the probate court is final unless appealed from within twenty days, and we have at once the suggested condition of a general time limit fixed by law. If this act of probating Mrs. Peck's will, issuance of letters testamentary, etc., are in any sense an order, sentence or decree of the probate court, then it must stand absolutely and irrevocable and no act of any person can reopen the matter, nor can any act thereafter be done to prevent the operation of Mrs. Peck's will upon her property unless by appropriation of law, to wit, dower and curtesy, or change of conditions. The third contention is that of Mr. Peck, that he is on the same basis in taking two thousand dollars and one-half the estate as if he were to take curtesy in his wife's real estate, and has the same period of time within which to exercise it. We think his proposition is entirely fallacious. If Mr. Peck took curtesy he takes that portion of the estate by operation of law. *Dummerston* v. *Newfane*, 37 Vt. 9; *Johnson* v. *Johnson*, 41 Vt. 467.

If Mr. Peck is to take his two thousand dollars and one-half the remainder of the estate, he takes not by appropriation of law but by descent as an heir. *Harrington* v. *Harrington's Est.*, 53 Vt. 649; *Sawyer* v. *Heirs of Sawyer*, 28 Vt. 249.

The death of Edward W. Peck abated the waiver proceeding, and no rights acquired by him through filing the written waiver would survive to his executors. *Fales* v. *Stone*, 9 Met. 316; *Ferrin* v. *Kenney*, 10 Met. 294; *Sherman* v. *Newton*, 6 Gray 307; *Brigham* v. *Hunt*, 152 Mass. 257; *Tuck* v. *Fitts*, 18 N. H. 171; 1 Cyc. 70; *Reade* v. *Hatch*, 19 Pick. 47; *Winhall* v. *Sawyer's Est.*, 45 Vt. 466; *Barrett* v. *Copeland*, 20 Vt. 244; *Wentworth* v. *Wentworth*, 12 Vt. 244.

Edward W. Peck, after the death of his wife, accepted the use, income, management, and possession of all the property of which she died seized, exactly as she provided for him by her will. His relation to her property thus indicated, continued to the time of his death. This constituted an election on his part to accept such life estate, by which he estopped himself from electing any further right by waiving the provisions made for him in her will. Bigelow on Estoppel, 578; *Smith* v. *Guild*,

34 Me. 443; *Weeks* v. *Patten,* 18 Me. 42; ·*Benedict* v. *Montgomery,* 7 Watts & S. 238; *Smith* v. *Smith,* 14 Gray 532; *Van Dague* v. *Van Dague,* 14 N. J. Eq. 49; *Fulton* v. *Moore,* 25 Pa. 468;. *Kline's Appeal,* 117 Pa. St. 139; *Snook* v. *Snook,* 43 N. J. Eq. 132; 1 Woerner Law of Administration, 2nd Ed. 291; 2 Williams on Executors, 772; *Leonard* v. *Crommelin,* 1 Edw. Ch. 208; *Hawley* v. *James,* 16 Wend. 143; *Delay* v. *Vinal,* 1 Met. 63; Redfield on the Law of Wills, Part 2, pp. 737-739-741; *Childs* v. *Stoddard,* 130 Mass. 110; *Watson* v. *Watson,* 128 Mass. 152; *Fiske* v. *Fiske,* 173 Mass. 413; *Drake* v. *Wild,* 70 Vt. 52; *Chaffee* v. *Chaffee,* 70 Vt. 231; *Wells Est.* v. *Cong. Church,* 63 Vt. 116; *In re Hiram Blackmer's Est.,* 66 Vt. 46; *Meach* v. *Est. of Meach,* 37 Vt. 414; *Allen* v. *Knowlton,* 47 Vt. 512; *Hathaway* v. *Hathaway,* 46 Vt. 234; *Hartlandt* v. *Hackett,* 57 Vt. 92; *White* v. *White,* 68 Vt. 161.

A devise of real and personal property for life under statutes like ours puts the survivor to an election. *Herbert* v. *Wren,* 7 Cranch. 370; *Matter of Foster,* 76 Iowa 364; *Potter* v. *Worley,* 57 Iowa 66; *Howard* v. *Smith,* 78 Iowa 73; *Snyder* v. *Miller,* 67 Iowa 261; *Clark* v. *Clark,* 132 Ind. 25.


*Hunton & Stickney* for the appellants.


The plea in abatement alleges the decease of Mr. Peck, and if it be urged that the proceeding was in fact abated by the death of Mr. Peck; then the prayer of the plea is bad, for it should be not, that the "writ, declaration and pretended waiver be quashed and said waiver be dismissed," but it should be "if the court will proceed any further." *Hallowes* v. *Lucy,* 3 Levinz. 120, Latch. 178; *Foxwist et al.* v. *Tremaine,* 2 Saund. 210a; Story's Pl. 123; Comyn's Dig. H. 33, I. 12. This defect is reached by general demurrer. *Landon* v. *Roberts,* 20 Vt. 286, 288.

The petitioner claims that by reason of the facts, which he says exist, Mr. Peck's conduct and pretended claims constituting those facts, he in his lifetime, and his executors now, are estopped from all right to waive the provisions of the will of Harriet C. Peck. Mr. Peck's waiver was in writing. He made an express election. "An express election is made by some single, unequivocal act of the party, accompanied by language

showing his intention to elect, and the fact of his electing in a positive, unmistakable manner,—as, for example, by the execution of a written instrument declaring the election. As the election becomes fixed by such definite act, and at such precise time, no questions concerning it can arise.'' Pom. Eq. Jur. §514. So far as this election can be qualified or restricted by subsequent declarations of Mr. Peck short of an absolute and express disclaimer duly executed by him, or avowed by him, it is submitted that no such declaration inconsistent with its terms can control the effect of his written waiver filed within the time limited by the court according to the statute. *Mathews* v. *Mathews,* 141 Mass. 511, 515.

The estoppel claimed is, of course, an equitable estoppel arising from conduct, including positive acts, spoken or written words, negative omission to do anything and silence. It is defined by Pomeroy, 2 Eq. Jr. §804, as ''The effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps otherwise have existed, either of property, or contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'' An essential element is, that the party alleging it has, in reliance on the conduct complained of, been induced to act, and acted, to his prejudice. *Ibid* §812, citing *Wheelock* v. *Hardwick,* 48 Vt. 19: ''He must have placed himself in such a situation that he would suffer a loss as the consequence of his action if the other party were allowed to repudiate the effects of his conduct.'' *Holden* v. *Torrey,* 31 Vt. 690; *Hicks* v. *Cram,* 17 Vt. 449; *Deavitt, Assignee* v. *Hooker & Kent,* 73 Vt. 143; 69 Vt. 360; 62 Vt. 300; 79 Vt. 275; 67 Vt. 38.

The special demurrer was properly overruled. The petition of Mr. Clark is not a declaration, nor is it governed by the rules of pleading at common law. The proceeding is statutory and addressed to a court whose jurisdiction is purely statutory. It is not an adversary proceeding founded upon a matter of contract or upon alleged wrong doing, but an application addressed to the discretion of the court, asking that the waiver of Mr. E. W. Peck be dismissed for the reasons stated. *Holdridge* v.

*Holdridge's Est.,* 53 Vt. 546; *In re Harriet Welch's Will,* 69 Vt. 127; *Hurlburt* v. *Miller's Est.,* 72 Vt. 110.

WATSON, J.   Harriet C. Peck, a married woman, died December 25, 1903, testate.   Probate of her will was granted, and Gardner S. Wainwright and Sayles Nichols, the executors named in the will, duly qualified as such.   By the will the surviving husband, Edward W. Peck, was given a life estate, subject to the payment of certain annuities.   Within eight months after the will was proved Edward W. made application to the probate court for an extension of time in which to elect to waive its provisions, and on hearing, the petitioner in this case and other beneficiaries under the will being there represented by their attorney, and objecting thereto, the application was granted and the time extended to the first day of January, 1905.   Within the time thus extended he notified the court in writing that he had elected to waive the provisions of the will, and that therefore he was entitled by law to take the sum of two thousand dollars and one-half of the remainder of the estate, requesting that his interest in the estate be assigned and set over to him.   Edward W. died June 26, 1906.

On January 23, 1907, William H. Clark filed with the probate court his petition in these proceedings, praying that a time be appointed for hearing and determining the rights of the petitioner and all others interested, and that the waiver of Edward W. be disallowed and dismissed.   Some days later the petitioner also filed a motion to dismiss the waiver on the ground that the right was personal to Edward W., and that the waiver never having been determined by the court, or established as a legal right, ceased at his death.   On notice to all parties interested, and after executors Nichols and Wainwright had filed their answer to the petition, the court on hearing found and adjudged that Edward W. by his acts exercised his election to take and did take of the estate under and by virtue of the terms and provisions of the will and adjudged the waiver inoperative and void, and that the estate should be administered and decreed according to the terms of the will.   From this order and decree the executors appealed, and the record being filed in the county court the petitioner, pleading in abatement, prayed that the pretended waiver be disallowed and dismissed because of the

death of Edward W. before any hearing, order, or decree was had thereon. To this plea and to the motion to dismiss the waiver, filed in the probate court, the executors demurred. The objection made in the probate court to the order extending the time in which to make election, was overruled *pro forma,* as was the motion to dismiss the waiver; the demurrers to the motion to dismiss and to the so-called plea in abatement were sustained and the plea adjudged insufficient. The questions raised by exceptions to these several rulings are before us for consideration.

Three substantive points are stated by the petitioner as presented by the record: (1) Had Edward W. the statutory right to the extension of time granted him in which to make his election? (2) On his death did the right of waiver survive? (3) Did he by his acts accept the provisions of the will and thereby estop himself from taking under the statute by force of his waiver? The first two of these questions arise on the exceptions stated above and will be considered in their order.

That Edward W. had the right to make such waiver, if seasonably exercised, there can be no question. Whether he was precluded from taking the benefits resulting therefrom is another thing, a question to be considered on exceptions stated later.

It is contended that the waiver was not seasonably made. Section 2543 of Vermont Statutes reads: "If a married woman dies, leaving no issue, but leaving a will, her husband may waive its provisions as a widow may waive the provisions of her husband's will." One definition of the word *as* is, "In the same manner with or in which." Webster's International Dictionary. In this sense it is used in that section, the law having the same meaning as though it read, her husband may waive its provisions in the same manner in which a widow may waive the provisions of her husband's will. The question then is, In what manner may a widow waive the provisions of the will of her husband? By V. S. 2419 when the widow waives the provisions made for her in the will of her husband, in case he dies without issue, she may take estate as is now provided in like cases of intestate estates. By Laws of 1896, No. 45, sec. 1, real and personal estate of a deceased person, not lawfully disposed of by will, and not otherwise appropriated and distributed in pursuance of law, shall descend: "If the deceased is a married

person and leaves no issue the surviving husband or wife, as the case may be, * * *, if either waives the provisions of the will of the other, shall be entitled to the whole of the deceased's estate forever, if it does not exceed two thousand dollars. But if it exceeds that sum, then the survivor shall be entitled to two thousand dollars and one-half of the remainder." And by Laws of 1896, No. 44, sec. 5, in amendment of V. S. 2532, "The widow may be barred of such one-third part of the lands of her husband in the following ways: * * * Second, where her husband by his last will and testament made provision for such widow, which, in the judgment of the probate court, was intended to be in lieu of said one-third or her dower interest in said estate. * * * But the widow may, within eight months after the will of her husband is proved, or after letters of administration are granted on his estate, or in such further time as the court in its discretion allows, waive * * * the provisions made for her by the will of her husband, * * * and notify the court of her election in writing; and the court shall thereupon order said one-third set out as in other cases."

Notwithstanding the section last quoted did not contain all the statutory provisions touching the widow's right to waive her husband's will, it contained the only provisions prescribing the mode or manner of exercising that right; and in this respect it was by the law, giving the husband the right of waiver,— V. S. 2543, recited above,—made applicable to him as well. We hold therefore that the right of waiver in question was exercised in the manner provided by law; that it was within the discretionary power of the probate court to allow further time to the surviving husband in which to make his election; and since it was made within the extension of time granted, it was seasonably done. *Hathaway* v. *Hathaway,* 44 Vt. 658.

It is urged, however, that under the law by which a husband takes two thousand dollars and one-half of the remainder of his wife's estate in case she dies intestate and without issue, he takes by descent as heir; and that when she dies testate if he would waive the will and take of her estate in the same way, he must file his waiver, and appeal from the decree establishing the will within the time allowed therefor, otherwise he, as all others, is bound by the decree, and the will operates absolutely on all the property of the estate. This argument is based on what is claimed to be the force of the common law: that when

the will of a femme covert is offered for probate the surviving husband is put to his election; that he must protest against its probate or he is bound by its provisions. And it is contended that this is the waiver contemplated by No. 45 of the Laws of 1896. But an examination of the law touching the subject shows the fallacy of this position.

At common law a married woman was utterly incapable of devising lands,—*In re Polly Carey's Estate*, 49 Vt. 236,—and since this incapacity did not arise from any interest of the husband in her property, it could not be cured by his renunciation of interest. *Dye* v. *Dye*, 13 Q. B. D. 147. Also with some exceptions not material here, she lacked ability to make a valid testamentary disposition of chattels without the assent of her husband. But this disability arose by virtue of the husband's marital rights, and her testament could have force only because assented to by him, and to be operative the consent must be to the particular will and continue to the probate. The question was not whether he protested against the will, but whether he consented to it; and the probate was conclusive not only as to its proper execution, but as to the husband's assent also, where such assent was necessary to give the will effect. Yet then it amounted to a gift from the husband, and his interest in the property thereby passed according to the will, but not merely by force of it, nor because his consent added anything to her testamentary ability. *In re Polly Carey's Estate*, 49 Vt. 236; *Morton* v. *Onion*, 45 Vt. 145; *Fisher* v. *Kimball*, 17 Vt. 323; *Cutler* v. *Butler*, 5 Fost. 343; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534; *Ex Parte Fane*, 16 Sim. 416, 39 Eng. Ch. 406, Am. Ed.; 1 Williams Exrs. 7th Am. Ed. *46; *George* v. *Bussing*, 15 B. Mon. 558.

At the time of the execution of the will in question, every married woman, the same as all other persons of age and sound mind, had the power by statute to dispose of her real and personal estate by will. V. S. 2346. Whatever may be said concerning the conclusive effect at common law of the probate of the testament of a married woman as a waiver of the husband's marital rights in her personal estate, the doctrine has no force here, by analogy or otherwise. For since the wife's testamentary power under the statute does not in any degree arise from the assent of the husband, neither the validity of her will, nor its probate, depends on such consent being shown. And it not

being essential to either, the surviving husband cannot on any principle of estoppel be precluded by the probate from subsequently asserting his right of election. Indeed, since the statute (V. S. 2356) expressly provides that "the probate of a will of real or personal estate shall be conclusive as to its due execution," its conclusiveness is impliedly so limited. The maxim, the express mention of one thing implies the exclusion of another, is here applicable. *Nimblet* v. *Chaffee,* 24 Vt. 628; *In re Varnum,* 70 Vt. 147.

*Morton* v. *Onion,* 45 Vt. 145, was an appeal from the decree of the probate court establishing Polly Carey's will executed before marriage and after married women had been given the power by statute to devise their real estate, but before any statute enabling them to bequeath their personalty. After making the will she married. She died without issue, and the surviving husband gave his consent in writing to the establishment of her will. Considerable of the property disposed of by the will remained in the testatrix, unaffected upon her death, by any marital rights of the husband. The probate was opposed by the heirs on the ground that the will was executed while the testatrix was a femme sole, and that it was revoked by her subsequent marriage. The will was held entitled to probate. The case of *Hodsden* v. *Lloyd,* 2 Bro. Ch. 534, cited above, was there recognized as stating the true doctrine of the law touching the assent of the husband as affecting the disposition of personal estate of the wife by will; but to what extent the application of that doctrine might differ in this State from its application in England on account of the difference of his marital rights in the two jurisdictions, the Court deemed it not important then to discuss or determine.

Later an appeal was taken from the decree of the probate court distributing Carey's estate in accordance with the provisions of the will, and that is the case reported in the 49 Vt. 239, to which reference has been made. The lawful heirs and appellants there contended that the distribution made was erroneous, at least as far as the personal estate was concerned, claiming a revocation of the will to that extent by the testatrix's marriage. It was held that the only conclusive effect of the probate of the will was as to its due execution; that it did

31

not settle what property should pass by it; that questions as to what it did pass remained to be then determined on the case agreed; that the will being established it would pass all the property embraced in its provisions over which the testatrix had testamentary power at the time of her death, namely, the real estate; but that as to the bequests of personalty, it was revoked by the marriage and was inoperative.

In principle the question of what part of the estate passes by the will, and what under the law of descent, is the same whether it arises, as in the case last cited, where it was contended that the will was inoperative as to some part of the estate because of lack of testamentary ability, or as here where it it is urged that the waiver is inoperative by reason of the acceptance of the provisions of the will.

In *Ward* v. *Church*, 66 Vt. 490, the bill was brought for the construction of a will. The case stood on the master's report. The will was proved, and the estate settled in the probate court. The oratrix was the only child and heir at law of the testator. Her mother, who took a life estate in the property, died before the settlement of the estate. At the time of the settlement all parties in interest were either present or represented by attorney. The probate court decreed to the oratrix a life estate in all the property of the estate, "pursuant to the last will and testament of the deceased and the laws of this State." From this decree no appeal was taken. In the court of chancery it was contended that, under the will and the laws of this State, the oratrix took the entire estate, real and personal, in fee; and she brought her bill to have it so declared. It was held that, in distributing the estate, on the settlement thereof, it was the province of the probate court to determine and adjudge the kind of estate in the property, to which the oratrix was entitled; that she had the right to have her interest in and to the property then being distributed determined and decreed accordingly; and that if the decree did not give her the kind of estate to which she was entitled, she could and should have appealed therefrom.

Upon principle and authority therefore we think it clear that the surviving husband's right of waiver was not affected by his failure to object to the probate of the will, nor by his omission to take an appeal therefrom; and that any question

whether he shall take under the will, or under the statute of descent by force of his waiver, is involved in the decree of distribution, and should be determined in connection therewith.

Secondly.  Did the proceedings of waiver survive the death of the husband?  It is argued that the right was personal to him, and that notwithstanding he made his election and notified the probate court thereof within the time allowed for that purpose, no action was had thereon by the court in his lifetime, hence the waiver was not made complete and did not survive to his executor or administrator.  Assuming that such right is personal to the husband, and that it does not pass to his representatives, the question is, whether any action of the probate court was in law essential to the completeness of the waiver. Again adverting to the Laws of 1896, No. 44, section 5, it is seen that after specifying the time in which a widow may exercise the power of waiver "and notify the court of her election in writing," instead of providing for a hearing thereon, the statute then reads: "and the court shall thereupon order said one-third set out as in other cases."  The language used is too plain to admit of any doubt that in case of a waiver under the provisions of that section, no action of the probate court is necessary to perfect the act.  And since the waiver of the provisions of a wife's will by the surviving husband may be had in the same manner, no action of the court was required to make the waiver in question complete. See 1 Pom. Eq. Jur. sec. 514; *Register* v. *Hensley,* 70 Mo. 189.  It follows that the waiver by Edward W. became a perfected act in his lifetime and that the question of the survival of the right does not arise.

The holdings in connection with the points above considered are decisive that in overruling the objection to the granting of the extension of time to the surviving husband in which to make his election; in overruling the motion to dismiss the waiver-proceedings by reason of his death; and in sustaining the demurrer to the motion to dismiss and to the so-called plea in abatement and adjudging the plea insufficient, there was no error.

The will, which is referred to and made a part of the petition, contains the provision: "I give to my beloved husband, Edward W. Peck, the possession, management, use and control and income of all my estate, real and personal, during his natural life—subject to the payment of the annuities hereinafter

provided." The annuities to which reference is thus made are several in number, aggregating at least $25,000.

The petition alleges in short that at the decease of his wife, Edward W. entered immediately into the possession, control and management of her entire estate, and continued in the possession, management, use and control thereof till the time of his death appropriating to himself all of the income and a portion of the principal of the estate, the whole in value a large sum, to wit, more than twenty thousand dollars, under a claim of right conferred upon him, as he said, by virtue of the terms and provisions of the will, repeatedly asserting that he was so managing and using the property; and that no portion of the estate thus used and appropriated, was ever returned or offered to be returned by him to the estate; that long after Edward W. had received the entire income of the estate, and long after he had appropriated to himself large sums of the principal, he, on the 23rd day of September, 1904, filed in the probate court his application in writing stating, among other things, that he then had under consideration the matter of waiving the will and that he could not yet intelligently determine whether he ought to make such waiver, asking for an extension of time for that purpose; that on the 12th day of December following, he filed in the office of the court a notice in writing that he elected to waive the provisions of the will, etc.

To this the executors answered, secondly, that Edward W. within the time limited by statute for him to exercise the right of waiver, applied to the probate court for an extension of time in which to make his election, which application was granted, and that within the time of such extension he waived the provisions of the will and notified the court thereof in writing, reciting the notice; and thirdly, that the will was proved by the probate court on the first day of February, 1904, on which day the executors named therein, Nichols and Wainwright, duly qualified as such; in short, that the executors caused an inventory and an appraisal of the property of the estate to be made and filed, also filed their own inventory charging themselves with the property, all as required by law; that thereafter during the lifetime of Edward W. the executors retained the possession, management, and control of the estate; and that Edward W. did not have the possession, management, use, control, and income of all the estate, he receiving of the same only what they

permitted him to have and gave him from time to time at his request; that he had the occupancy of the residence belonging to the estate, the use of the personal property therein, the use of the horses, carriages, etc., all under an agreement with the executors that he should be charged for the use thereof—the sum to be fixed by the probate court; that the executors kept a true and accurate account of the dealings between the estate and Edward W., charging him with cash advanced, and for the use of the residence, etc., and, in view of the injunction issued in the chancery case, crediting him with cash refunded to the estate at the end of each year, on account of advancements to him in excess of the net income of the estate; and that except as shown by the account so kept, he did not in his lifetime after the decease of his wife have or receive any of her goods, chattels, or estate.

The replication to the second point in the answer is substantially like the petition, except that in some respects the allegations are made with greater particularity and contain additional facts in substance as follows: that for more than twenty years before his wife's death Edward W. had the exclusive control and management of all her property and during all that time handled the same as her trustee and agent; that at the time of her death with full knowledge of all questions relating to title and value of all the property of her estate, and with full knowledge of all his rights, he immediately entered into possession, control, and management of all said property, and used and appropriated to his own use and benefit the entire income of the same, as long as he lived, and elected to take and did take, hold, accept, and use the same under and by virtue of the provisions of her will creating for him a life estate, thus continuing to the time of his death; that in the control and management of the property as aforesaid he used and expended a large amount of money, both of the net income of the estate and of the principal, and during the same time enjoyed the rents and profits of the homestead of which his wife died seized—all of which rents, income, and principal by him so appropriated exceeded $25,000, no part of which was ever paid back or returned to the estate, nor was the same ever tendered to anyone representing the estate; and that in the occupation and management of the property of the estate, he declared and proclaimed that he was so occupying and managing it under and by virtue of the life estate

provided for him by his wife, and that the terms of her will should be observed and fully performed by him as long as he lived.

To the third point made in the answer the petitioner demurred, which demurrer was overruled and the answer adjudged sufficient. To the replication to the second point in the answer the executors demurred, and the demurrer was sustained *pro forma*. Exceptions were taken to these rulings, also to the judgment that the petition be dismissed with costs, and that the waiver be sustained and the estate distributed according to law. These exceptions present the third question argued: whether Edward W. by his acts accepted the provisions of the will and thereby estopped himself from taking of the estate under the statute of descent.

On the allegations under the third point of the answer it is clear that ever after the probate of the will the possession, management, and control of the property of the estate were in the executors and being exercised by them. It is equally clear that Edward W. did not have the possession, management, use, control, and income of all the estate, real and personal, at any time after the testatrix's death, within his natural life. Hence there was nothing in his acts inconsistent with his waiver by which he in his lifetime, or his personal representatives after his decease, could be estopped from taking of the estate according to the statute. The third point made in the answer was sufficient, and the demurrer was properly overruled. The demurrer to this part of the answer was special; but since the technical accuracy of the common law has never been deemed essential to the form of pleadings in questions of this character on appeal from the probate court, the demurrer has been considered as general and to matters of substance only.

Is the replication to the second point in the answer sufficient? The election made by Edward W. according to the mode prescribed by the statute was in law an express election,—1 Pom. Eq. Jur. sec. 514,—and he cannot be precluded from taking in opposition to the will, unless his acts of which his declarations form a part, are shown to have been so manifestly inconsistent therewith that justice and equity, as respects the interests of others, require it. *Fitts* v. *Cook*, 5 Cush. 596. Certainly in the circumstances of this case nothing less than such acts as, had there been no express election, would constitute an

implied one to take under the will, can work an estoppel *in pais*. An election may be by matter *in pais* as well as by matter of record; but it can be only by plain and unequivocal acts, with full knowledge of all the circumstances, and of the party's rights; and such acts must be done with the intention of electing. *Strafford* v. *Powell*, 1 Ball and B. 1; *Dillon* v. *Parker*, 1 Swanst. 380; *Edwards* v. *Morgan*, McClell. 541. It is admitted by the demurrer that Edward W. had such knowledge. Hence the question narrows itself to the effect 'of his acts. The allegations show that immediately after the death of his wife he entered into the possession, control, and management of all the estate, and used and appropriated to his own use and benefit the entire income thereof to the time of his death; and they further show that during the same time he appropriated to his own use and used "large portions of the principal," so that the rents, income, and principal thus appropriated and used exceeded $25,000. How much of this aggregate sum was of the principal does not appear; but construing the allegation most strongly against the pleader, it must be the larger part. By the will he was given the possession, management, use, control, and income of all the estate during his natural life, but he was given no part of the principal. He did not act in ignorance, since as admitted by the demurrer he was fully advised of his rights under the law, also under the will. In what way did he take "large portions of the principal"? Certainly not under the will. The only way in which he could take of the principal was by an election to take under the statute. There is to be considered in connection herewith the allegation that Edward W. for a large number of years before the testatrix's death had the exclusive control and management of all her property, handling it during all the same time as her trustee and agent. This shows his relation to the property at the time of her death to have been such as in reason fairly to require him thereafter to continue in the control and management thereof, as far as necessary to its preservation and safety, until such time as he could relinquish the same to her personal representatives. Also the acts of Edward W., set forth in the petition and admitted, in making an application to the probate court within the specific time allowed by statute in which to make an election, asking for further time and stating therein, "that said matter is now under consideration and that he cannot yet intelligently determine

whether he ought" to waive the provisions of the will, and in subsequently making the express waiver against the will.

.Excluding the acts constituting the express election and the notice thereof, his acts alleged are in part evidence of an intention of election in favor of the will, and in part of an intention of election against it, the latter way of as much or more force as the former. They do not show an intention either way to the rejection of the other, without which there can be no election. It cannot be said therefore that the acts in question show plainly and unequivocally an election to take under the will. Consequently they do not preclude a taking according to the election expressly made. In *Padbury* v. *Clark,* 2 Macn. & G. 298, Lord Cottenham said: "If a party being bound to elect between two properties, not being called upon so to elect, continues in the receipt of the rents and profits of both, such receipt, affording no proof of preference, cannot be an election to take the one and reject the other." This principle was applied and held controlling in *Spread* v. *Morgan,* 11 H. L. Cas. 588, Lord Cranworth saying, "The true doctrine is very correctly stated by Lord Cottenham in *Padbury* v. *Clark.*" Decisions were made upholding the same principle in *Dillon* v. *Parker,* 1 Swanst. 359; *Marriot* v. *Badger,* 5 Md. 306; *Whitridge* v. *Parkhurst,* 20 Md. 62. The replication was therefore insufficient and the demurrer was properly sustained.

As the case was presented the judgment dismissing the petition with costs, sustaining the waiver, and ordering distribution of the estate according to law, construing the last part as having reference to that portion of the estate in controversy in these proceedings, namely, the surviving husband's interest, and as ordering that it be distributed according to the law of descent, was well enough. Yet since the express waiver was effective without any declaration of the court, unless the estoppel *in pais* was made out, that part adjudging the waiver sustained was superfluous. Pursuant to the agreement of parties, however, *the judgment is reversed pro forma and cause remanded with leave to replead.*